Nettie. G. CARLILE, Plaintiff-Appellant,

v.

SOUTH ROUTT SCHOOL DISTRICT RE–3J IN the COUNTY OF ROUTT, STATE OF COLORADO, Defendant-Appellee.

No. 82–1672.

United States Court of Appeals, Tenth Circuit.

Aug. 2, 1984.

John H. Love, Boulder, Colo., for plaintiff-appellant.

C. Scott Crabtree of Cogswell & Wehrle, Denver, Colo., for defendant-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

This is an employment discrimination action. *See* Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1982). We are asked to review the prima

facie test used by the trial court and to determine whether that test, adopted to reflect the particular facts of this case, comports with the guidelines and standards set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and its progeny.

Nettie Carlile, a public high school teacher, brought this employment discrimination action against her employer, the South Routt School District (District). She alleged that the District's failure to renew her contract and to grant her tenure was based upon gender, in violation of Title VII. Title VII provides that it shall be unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a) (1982). After tailoring the *McDonnell Douglas* prima facie test to suit the facts of a tenure and teacher nonrenewal case, the trial court held that Ms. Carlile failed to establish a prima facie case. Ms. Carlile appeals.

From August 1972 through June 1975, Ms. Carlile was employed as a teacher at the Soroco High School in rural Colorado. Ms. Carlile holds an undergraduate degree in English and education as well as a masters degree in history; when hired she was an experienced English teacher and had been the head of a high school English Department in another Colorado school district. During her three years at Soroco High School, Ms. Carlile taught both history and English to students in all high school grades. During her first two and one-half years there she received good to excellent teaching evaluations from Mr. Baker, the high school principal. However, in March 1975, Mr. Baker gave Ms. Carlile a poor evaluation and recommended that her contract not be renewed for a fourth year.

The events which took place during the first half of 1975 essentially give rise to this lawsuit. During the first few weeks in January, Ms. Carlile was ill and unable to work; a substitute teacher was hired in her place. Mr. Baker was also ill and unable to work from the middle of January until the first part of March. Mr. Meek, the District Superintendent, acted as principal during Mr. Baker's absence. During this same period, rumors were circulating that the head coach of the boys' basketball team would resign. The coach did resign, but not until May, one month *after* the District formally denied the renewal of Ms. Carlile's contract. On July 17, 1975, the District hired Dan England to replace Ms. Carlile as the history teacher and also to become the head coach of the boys' basketball team.

At trial, the District attempted to justify the sudden change in Ms. Carlile's evaluations from excellent to poor. The District argued that during the first part of 1975 Ms. Carlile's activities were more closely scrutinized because she would automatically receive tenure by operation of Colorado law if her contract were renewed for a fourth year.[1] The District claimed that it was concerned about Ms. Carlile's general attitude toward teaching and ultimately concluded that she "was not the type of teacher [they] wanted on tenure in [their] school district." Record, vol. 1, at 47. Ms. Carlile contended, however, that Messrs. Meek and Baker had known since January that the basketball coach was planning to resign, even though he did not formally resign until May. Thus, she argued, the reason for her nonrenewal, and hence her disqualification for tenure, was that the District wanted to replace her with a man, someone who could coach basketball and

---

1. *See* Colo.Rev.Stat. § 22–63–112 (1973 & Supp. 1980).

fulfill her teaching duties at the same time. *Id.* at 48.

The trial court held that Ms. Carlile failed to establish a prima facie case that the motive underlying her termination was discriminatory in nature. The court, however, found that the termination was not based on the quality of Ms. Carlile's teaching. Rather, the trial court found that the evolving needs of the District required that Ms. Carlile be terminated in favor of another teacher with somewhat different abilities—e.g., one who could teach history and English as well as coach boys' basketball. The trial court added that even if she had satisfied her prima facie burden the evolving needs of the District would be a legitimate nondiscriminatory reason for Ms. Carlile's termination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

On appeal, Ms. Carlile argues that the prima facie test formulated by the trial court was erroneous. Although other circuits have tailored the *McDonnell Douglas* prima facie test to suit the needs of employment discrimination cases in academic settings, this circuit has not. This case presents the opportunity to review the *McDonnell Douglas* test, as modified by its progeny, and as applied to allegations of employment discrimination in an academic setting.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the Supreme Court held that the plaintiff in a Title VII case has the initial burden of establishing a prima facie case of discrimination. The plaintiff can satisfy that burden by showing:

(1) that he or she belongs to the protected class;

(2) that he or she applied and was qualified for the position;

(3) that despite such qualifications plaintiff was rejected; and

(4) that after plaintiff's rejection, the position remained open and the employer continued to seek similarly qualified applicants.

*Id.* The rationale for requiring plaintiff to carry this initial burden is to eliminate "the most common nondiscriminatory reasons for the plaintiff's rejection," and to raise the inference of discrimination, since acts which meet the four pronged test, " 'are more likely than not based on the consideration of impermissible factors.' " *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (citation omitted).

The establishment of the prima facie case creates a rebuttable presumption of unlawful discrimination by the employer. The Court has been careful, however, to acknowledge that the requirement of prima facie proof be adaptable to differing fact situations and that the four prongs of the test be flexible. *See McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13, and *Texas Department of Community Affairs*, 450 U.S. at 253–54 n. 6, 101 S.Ct. at 1093–94 n. 6. The language of Title VII itself requires that any test tailored to aid in discerning violations of the statute be flexible. By prohibiting discrimination in matters of "compensation, terms, conditions or privileges of employment, based upon an individual's race, color, religion, sex, or national origin," Congress presumed that the fact situations to which the statute would be applied would be wide ranging and necessarily evidence varying degrees of dissimilitudes.

Other circuits have consistently approved the adaptation of the *McDonnell Douglas* test to allegations of employment discrimination in academic settings.[2] Both the

---

**2.** *See, e.g., Zahorik v. Cornell Univ.*, 729 F.2d 85, 91–94 (2d Cir.1984); *Lynn v. Regents of the Univ. of California*, 656 F.2d 1337, 1341–45 (9th Cir.1981), *cert. denied*, 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982); *Smith v. Univ. of North Carolina*, 632 F.2d 316, 339–46 (4th Cir. 1980); *Kunda v. Muhlenberg College*, 621 F.2d 532, 541–43 (3d Cir.1980); *Whiting v. Jackson St. Univ.*, 616 F.2d 116, 120–21 (5th Cir.1980); *Jepsen v. Florida Bd. of Regents*, 610 F.2d 1379, 1382–83 (5th Cir.1980); *Sweeney v. Bd. of Trustees of Keene St. College*, 604 F.2d 106, 108 (1st Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980); *Davis v. Weidner*, 596 F.2d 726, 729–31 (7th Cir.1979).

Ninth Circuit, in *Lynn v. Regents of the University of California*, 656 F.2d 1337, 1341–45 (9th Cir.1981), *cert. denied*, 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982), and the Fourth Circuit, in *Smith v. University of North Carolina*, 632 F.2d 316, 339–46 (4th Cir.1980) have applied the *McDonnell Douglas* criteria to academic environments wherein female professors were denied contract renewals and tenure appointments. Both circuits agreed that the applicable elements of the prima facie test in such cases should require plaintiff to show:

    1. that she is a member of a class protected by Title VII;

    2. that she was qualified for the position or rank sought;

    3. that she was denied tenure or reappointment; and

    4. that in cases of reappointment or tenure others with similar qualifications were reappointed or granted tenure.

*See Lynn*, 656 F.2d at 1341 and *Smith*, 632 F.2d at 340.

■ We agree that these elements are applicable to an academic setting. Moreover, there is no reason to limit these elements to employment decisions made only by universities.[3] Rather, consistent with the purposes of Title VII and the rationale of cases like *McDonnell Douglas* and *Texas Department of Community Affairs*, these elements are flexible enough to be applied to employment decisions regarding the initial hiring, tenure, reappointment, or promotion by local school boards of teachers similar to Ms. Carlile who fall within the class of persons protected by Title VII. There is nothing in the rationale of those cases which have approved the application of the *McDonnell Douglas* test to allegations of discrimination in university settings to preclude the application of that same test to employment decisions made by local school boards.

■ We are mindful, however, that tenure decisions in an academic setting involve a combination of factors which tend to set them apart from employment decisions in general. *See Lieberman v. Gant*, 630 F.2d 60, 64, 66 (2d Cir.1980). Despite the fact that courts are reluctant to review the merits of tenure decisions, such decisions are not exempt under Title VII. Plaintiffs seeking to show discriminatory purposes in tenure or reappointment decisions ought to have available the means of challenging such decisions.

The trial court recognized the particular issues of a Title VII case involving contract renewal and tenure decisions and adopted the prima facie test formulated by the Fourth Circuit in *Smith*. The trial court found that although Ms. Carlile satisfied the first and third prong of the test, that she was a member of a protected class and that she was denied both reappointment and tenure, she did not establish the second and fourth prongs—that she was qualified for reappointment and tenure and that others with similar qualifications were reappointed and granted tenure. We do not agree that the trial court's test was erroneous, nor do we find that Ms. Carlile suffered manifest injustice because the trial court refused to accept as the law the prima facie test stipulated by Ms. Carlile's counsel at trial. In light of repeated decisions by the courts, including the United States Supreme Court, *see, e.g., Firefighters Local Union No. 1784 v. Stotts*, — U.S. ——, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), and *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), acknowledging the need to adapt and modify earlier Title VII cases so that the results more clearly reflect the letter and spirit of Title VII, the trial court did not commit reversible error by considering other prima facie tests before choosing the correct one. Parties to a dispute cannot stipulate to the law and assume that the court will follow blindly an incorrect interpretation of the law, especially in an unsettled and ever-changing area.

---

**3.** Ms. Carlile objects to the extension of the prima facie test adopted in the university cases to cases concerning local school boards. Plaintiff-Appellant's Reply Brief at 4. We do not agree. Rather, we find the rationale of those cases equally applicable to cases like the one now before us.

Additionally, the trial court was correct to treat and analyze the District's decision not to renew Ms. Carlile's contract as a denial of tenure as well. Under Colorado law special statewide qualifications are not required to receive tenure. Tenure is by operation of law and, hence, automatic after the teacher begins the fourth year of employment with the same employer. Colo.Rev.Stat. § 22–63–112 (1973 & Supp. 1980). Therefore, the District's decision not to renew Ms. Carlile's contract for the fourth year was properly treated also as a decision not to grant her tenure.

Factual determinations in Title VII cases are to be treated no differently than any other factual finding by the trial court. *United Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Thus, the trial court's findings of fact will not be reversed unless clearly erroneous. *Beck v. Quiktrip Corp.*, 708 F.2d 532, 535 (10th Cir. 1983).

In the case before us the trial court found that Ms. Carlile did not satisfy the second and fourth prongs of the prima facie test. These conclusions were based on the fact that after reviewing all the evidence and testimony, the trial court chose to accept the District's explanation that Ms. Carlile was not qualified for rehiring and tenure because the evolving needs of the District required her termination in favor of another teacher with somewhat different abilities. School districts are given wide latitude in discretion concerning whom to award tenure. *See Zahorik v. Cornell University*, 729 F.2d 85, 92–93 (2d Cir.1984). After reviewing the record we are convinced that the trial court's conclusion was not clearly erroneous. Thus, Ms. Carlile failed to establish the second prong because she was not qualified for rehiring.

Regarding the fourth prong, the District did not rehire or promote (grant tenure to) another teacher who possessed similar qualifications. The teacher who was hired possessed different qualifications since the needs of the District had changed and the position for which Dan England had to be qualified required the ability to teach history as well as coach basketball. Ms. Carlile does not argue that the District's combining of the coach and history position was pretextual nor does she allege that such is the practice in the South Routt School District with such practice having a disparate impact on female teachers. *Cf. Civil Rights Division of the Arizona Department of Law v. Amphitheater Unified School District No. 10*, 680 P.2d 517, 33 FEP Cases 1135, 1137 (Ariz.Ct. of App. 1983). On the contrary, Ms. Carlile sought to establish a case of disparate treatment. *See International Board of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977). Since she failed to establish the prima facie case of discrimination her cause must fail. Thus, there is no need to engage in any discussion or review of the trial court's conclusion that even if a prima facie case had been established the District articulated a legitimate, nondiscriminatory motive for Ms. Carlile's termination. Nor is plaintiff entitled to revised findings of fact and conclusions of law concerning any of the rulings made by the trial court.

In addition, we see no merit to plaintiff's argument that it was error for the trial court not to make any findings with regard to plaintiff's damages. Once the trial court concluded that plaintiff failed in her prima facie case, the subject of assessing damages became moot. Also, the trial court's order that plaintiff pay clerk and transcript fees was not an abuse of discretion. Plaintiff's argument that this order might be prejudicial if she were to prevail on appeal is unsupported by law. *See* 28 U.S.C. § 753(f) (1982).

The decision of the trial court is AFFIRMED.