41 F.3d 1516
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Jessie P. SMITH, Plaintiff-Appellant,
v.
DENVER PUBLIC SCHOOL BOARD, Defendant-Appellee.
 No. 91-1285.
 United States Court of Appeals, Tenth Circuit.
 Nov. 18, 1994.
 
 ORDER AND JUDGMENT[1]
 Before ANDERSON, REAVLEY,[2] and HENRY, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. This cause is therefore ordered submitted without oral argument.
 
 
 2
 Jessie Smith appeals an adverse summary judgment dismissing her action against the Denver Public School Board claiming discrimination in the terms and conditions of her employment under 42 U.S.C.2000e. She also contends that the district court erred by extending its judgment to include Smith's claims of discriminatory and retaliatory discharge. Because Smith has failed to make out a prima facie case for any of her discrimination and retaliation claims, we affirm. We also conclude that the district court properly included in its order the issues of discriminatory and retaliatory discharge.
 
 BACKGROUND
 
 3
 Smith began as a probationary contract teacher in the Denver Public School District ("District") in 1968. She acquired tenure status, and taught mathematics for most of her career at the junior high and middle school level. In January 1986, the District assigned Smith to Thomas Jefferson High School. In September 1986, pursuant to District procedure and state law, Smith was subject to a periodic tenure appraisal in which administrators observe the teacher, and make recommendations regarding strengths and weaknesses. On September 17, 1986, Jean Anderson, chairperson of the high school mathematics department, observed Smith's class, noted deficiencies in Smith's performance, and suggested methods for improvement. Smith took great exception to Anderson's negative evaluation and filed an internal grievance with the principal, Dr. Seick. Smith charged Anderson with "bias," "prejudice," and lack of "creditability." Appellant's App. at 70-73. Smith requested another evaluator, and although she was not entitled to a replacement, Dr. Seick brought in Dr. Wilson, the District math curriculum specialist.
 
 
 4
 Smith fared no better in Dr. Wilson's evaluation. Wilson suggested that Smith take classes in mathematics and that she seek in-house assistance in classroom management. On February 9, 1987, Smith filed another internal grievance, this time alleging that the District was biased and harassing her. Smith also filed a charge with the EEOC on February 27, 1987, claiming that the Denver Public School District and/or Board was discriminating against her, based on race and gender, by giving her low ratings, forcing her to attend excessive conferences relating to job performance, and constantly observing her classroom. Appellee's App., Doc. 2, Ex. CH.
 
 
 5
 At the end of the 1986-87 school year, Dr. Wilson recommended that Smith remain under close supervision during the following school year. Appellant's App. at 74. Consequently, the principal indicated that Smith might be placed on "formal appraisal" pursuant to District policy 1311B, which would require Smith to undertake a "plan for improvement" with the assistance of an appraisal team. Smith objected to being placed on formal appraisal, and apparently in an effort to accommodate her wishes, the District allowed Smith to avoid formal appraisal by taking an administrative transfer to Rishel Middle School. Appellant's App. at 36-37.
 
 
 6
 Smith was not on formal appraisal at any time during the 1987-88 school year. Shortly after school started, however, the Rishel principal, Dr. Jordan, began receiving numerous student and parental complaints regarding Smith. In November 1987, Dr. Jordan informed Smith that she would be observing Smith's class to determine whether the complaints were well founded. During her observations, from November 1987 through February 1988, Dr. Jordan noted several deficiencies, id. at 38-39, and issued Smith several letter's of warning due to Smith's failure to attend meetings with parents and her failure to fulfill additional teacher responsibilities. Id. at 41-44. In early 1988, Smith again filed an internal grievance, this time alleging that Dr. Jordan was harassing her and soliciting parental complaints, and that Dr. Jordan's excessive observations were causing classroom discipline problems.
 
 
 7
 Due to continuing problems, on March 15, 1988, Dr. Jordan requested a meeting with Smith to inform Smith that she was being placed on "formal appraisal." Although Smith was advised in writing as to the time and place of the meeting, she refused to attend. On March 17, Dr. Jordan issued a letter of warning for Smith's failure to attend. The next day, apparently in an effort to avoid formal appraisal, Smith took sick leave which continued through the end of the school year. During Smith's sick leave, she filed a second charge with the EEOC, alleging continuing race discrimination and retaliation for filing the earlier charge with the EEOC.[3]
 
 
 8
 Smith returned to Rishel Middle School for the 1988-89 school year subject to formal appraisal and began a "plan for improvement." During the appraisal period, however, Dr. Jordan continued to receive complaints about Smith and despite extensive counseling, evaluation, and suggestions for improvement, Smith's performance remained below District standards. Consequently, and pursuant to Dr. Jordan's recommendation, in early 1989 Smith was placed on leave pending tenure teacher dismissal proceedings.
 
 
 9
 Dismissal of tenure teachers in Colorado is governed by statute. See Colo.Rev.Stat. 22-63-301, -302 (1994). Pursuant to the statutory procedure, on February 13, 1989, the Superintendent of the Denver Public Schools recommended to the Board of Education that Smith be dismissed as a tenure teacher on the grounds of incompetence, and/or insubordination, and/or neglect of duty, and/or other good and just cause. See id. The Board accepted the charges for review, and pursuant to Smith's request, the parties proceeded to a tenure teacher dismissal hearing before an Administrative Law Judge ("ALJ"). The hearing extended from October 18 to November 2, 1989.
 
 
 10
 On January 22, 1990, after the hearing but before the ALJ issued his recommendation, Smith filed this civil action in district court. Smith's complaint essentially alleged discrimination in the terms and conditions of her employment; that the Denver Public School Board harassed her, placed her on formal appraisal, and initiated actions to remove her as a teacher because of her race and/or in retaliation for filing charges with the EEOC.[4]
 
 
 11
 Subsequent to Smith's filing, on March 20, 1990, the ALJ issued his Findings of Fact and Recommendation concluding that the Board had proved all four statutory charges for dismissal. The ALJ recommended Smith's termination. The Board then adopted the ALJ's findings and determined there was sufficient evidence to support findings of incompetence, insubordination, neglect of duty, and other good and just cause, any of which alone would constitute grounds for dismissal. Consequently, on May 17, 1990, the Denver Public School Board formally terminated Smith's employment.
 
 
 12
 Following Smith's official discharge, the Board filed an amended answer reciting these interim events, and on June 14 moved for summary judgment. The Board's summary judgment motion addressed Smith's allegations of discrimination in the terms and conditions of employment as well as her claims of discriminatory and retaliatory discharge. Furthermore, Smith's own memorandum in opposition to summary judgment focused primarily on the discharge issues. On July 9, 1991, the district court granted the School Board's motion, concluding that Smith had failed to present a prima facie case for disparate treatment, disparate impact, or retaliatory discharge.[5]
 
 
 13
 On appeal, Smith alleges that the district court erred in concluding there were no genuine issues of material fact regarding discrimination in the terms and conditions of her employment; including the District's recommendation that Smith be discharged. Additionally, she alleges that the district court was without jurisdiction to render an order dismissing her discriminatory and retaliatory discharge claims because, at the time she filed the complaint, the Board had not formally discharged her and the EEOC had not issued a right to sue letter on the specific issue of retaliatory discharge.
 
 DISCUSSION
 I.
 
 14
 In reviewing an order granting summary judgment, we must conduct a de novo review using the same standard the district court would use. Meredith v. Beech Aircraft Corp., 18 F.3d 890, 893 (10th Cir.1994); Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is only proper when no genuine issue of material fact is disputed. See Fed.R.Civ.P. 56(c). The School Board is entitled to summary judgment if Smith fails to make a sufficient showing of an essential element of the case to which she has the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In our review, we must look at the record in the light most favorable to the party opposing summary judgment, in this case Smith. See Meredith, 18 F.3d at 892; Boren v. Southwestern Bell Tel. Co., 933 F.2d 891, 892 (10th Cir.1991).
 
 
 15
 Smith attempted to raise a disparate treatment claim by alleging that the Board treated her less favorably because of her race. The Supreme Court, in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2746 (1993). Under the McDonnell Douglas procedure, a plaintiff must first establish a prima facie case of racial discrimination by a preponderance of the evidence. Id. at 2746-47. If the plaintiff is successful, then the burden shifts to the defendant to come forward with evidence of a nondiscriminatory reason for the plaintiff's treatment. Id. at 2747. After the defendant's burden of production is met, the plaintiff must then persuade the trier of fact that she was the victim of intentional discrimination. Id. at 2747-48.
 
 
 16
 We previously have applied the McDonnell Douglas criteria to claims of discrimination in academic environments and have concluded that these elements are applicable. See Carlile v. South Routt Sch. Dist., 739 F.2d 1496, 1499 (10th Cir.1984); see also Allen v. Denver Pub. Sch. Bd., 928 F.2d 978, 984 (10th Cir.1991). Accordingly, in order for Smith to establish a prima facie case of racial discrimination, she must show: (1) she was a member of a protected class; (2) that she was qualified for her job; (3) that she was placed on formal appraisal and recommended for discharge; and (4) that non-protected class members in the same or similar situations were not treated similarly. See McDonnell Douglas, 411 U.S. at 802 n. 13 (acknowledging that the requirements of prima facie proof should be adaptable to differing fact situations and the four prongs of the test be flexible); Carlile, 739 F.2d at 1499 (same).
 
 
 17
 Smith satisfied the first and third prongs of the test; that she was a member of a protected class, and that the Denver Public School Board placed her on formal appraisal and recommended her discharge. However, we conclude that she failed to establish the second and fourth prongs; that she was qualified for her job and that others with the same or similar qualifications were not placed on formal appraisal or recommended for discharge. Because Smith failed to establish a prima facie case, there is no need to discuss or review the trial court's conclusion that even if a prima facie case had been established the school district articulated a legitimate, nondiscriminatory motive for Smith's treatment. Thus, the district court properly granted summary judgment on this claim.
 
 
 18
 Smith also has attempted to make a disparate impact claim. She bases this argument on statistical evidence that a higher proportion of black teachers are placed on formal appraisal than the proportion of black teachers to the total teacher population.
 
 
 19
 Disparate impact cases arise where facially neutral employment practices have significant adverse effects on protected groups. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986-87 (1988). Although statistics are usually the focus in such cases, id., the plaintiff's burden of proof extends beyond the need to show mere statistical disparities. See id. at 991-92. The plaintiff must identify a specific employment practice that is allegedly responsible for the disparate impact, and must show how that practice caused the adverse impact. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656-57 (1989). In the present case, Smith has neither identified any specific employment practice allegedly responsible for the statistical disparities, nor has she demonstrated how that practice has caused the disparities. Thus, because racial imbalance, standing alone, does not establish a charge of discrimination, the district court properly granted summary judgment on this claim.
 
 II.
 
 20
 Smith also contends that the district court did not have the authority to dismiss the issues of discriminatory and retaliatory discharge. She claims that the discharge issues were not properly before the court because at the time she filed the complaint the school board had not formally discharged her and the EEOC had not issued a right to sue letter on the specific claim of retaliatory discharge.
 
 
 21
 The fact that Smith did not allege discriminatory and retaliatory discharge in her complaint does not preclude the district court from dismissing these issues on summary judgment. Federal Rule of Civil Procedure 15(b) "was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir.1982); see In re Santa Fe Downs, Inc., 611 F.2d 815, 817 (10th Cir.1980) (suggesting Rule 15(b) was designed to avoid the tyranny of formalism that was characteristic of former practice); 6A Charles A. Wright et al., Federal Practice & Procedure 1491, at 5 (2d ed.1990). Rule 15(b) provides: "When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Smith, in fact, acknowledges that issues presented to the trial court may be considered amendments to the pleadings, but simply contends that she did not impliedly consent.
 
 
 22
 The question of whether the parties have impliedly consented to try an issue is within the discretion of the trial court, whose finding will not be disturbed absent a showing of abuse of discretion. Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436, 439 (10th Cir.1979), cert. denied, 445 U.S. 964 (1980). We have held that "when an issue, not appearing in the pleadings, is raised without objection at trial, it is deemed to have been tried by the implied consent of the parties." Gallegos v. Stokes, 593 F.2d 372, 375 (10th Cir.1979). Other factors we have considered in determining whether issues have been tried by implied consent include whether the opposing party had adequate notice and whether they had a fair opportunity to defend. See Hardin, 691 F.2d at 456; Branding Iron Club v. Riggs, 207 F.2d 720, 724 (10th Cir.1953) ("The general rule is that a party cannot subsequently challenge an issue which is actually litigated if he has had actual notice and adequate opportunity to defend.").
 
 
 23
 Although the record indicates that Smith may have wanted to preclude the district court from deciding the discharge issues, Smith's conduct clearly reveals that she impliedly consented to place the issues before the court. Not only did she fail to object to the School Board's discussion and presentation of evidence focusing on her termination, Smith, herself, specifically and extensively addressed the issues. In fact, the thrust of Smith's memorandum in opposition to summary judgment focused on her claims of discriminatory and retaliatory discharge. See, e.g., Appellant's App., Doc. 5 at 103-04 (section heading states: "There is evidence of discrimination on Plaintiff's dismissal." (emphasis added)). Smith did not at that time, nor at any time during the thirteen months the motion was pending in district court, object to the presentation of evidence, or question the court's authority to decide these issues. Furthermore, the record reveals that Smith was aware that the discharge issues had entered the case as early as July 1990, yet at no time following did she indicate to the district court, in an appropriate manner, that she needed to conduct additional discovery in order to respond adequately to the discharge claims. Thus, we find the district court did not abuse its discretion in determining that the parties impliedly consented to try the issues of discriminatory and retaliatory discharge.
 
 
 24
 Furthermore, the fact that the EEOC had not yet issued a right to sue letter on the specific claim of retaliatory discharge did not preclude the district court from deciding the issue. It is a correct statement of the law that, as a general rule, a discrimination claim may not be filed in federal court before administrative remedies have been exhausted. Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1416 n. 7 (10th Cir.1993). However, we have previously found that where a complainant files an EEOC charge, conduct occurring after the filing that is "reasonably related" to the original charge, may be challenged in district court without filing an additional charge. Brown v. Hartshorne Pub. Sch. Dist. No. 1, 864 F.2d 680, 682 (10th Cir.1988); see also Stewart v. United States I.N.S., 762 F.2d 193, 198 (2d Cir.1985) ("This Court has held that district courts may assume jurisdiction over a claim reasonably related' to a charge filed with the EEOC, including incidents occurring after the filing of the EEOC claim."); Oubichon v. North Am. Rockwell Corp., 482 F.2d 569, 571 (9th Cir.1973) (providing district court may consider discrimination claims "like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC"). For example, courts have held that an act committed by an employer in retaliation for the filing of an EEOC charge is reasonably related to that charge, obviating the need for a second EEOC complaint. Brown, 864 F.2d at 682; see Kirkland v. Buffalo Bd. of Educ., 622 F.2d 1066, 1068 (2d Cir.1980). "Courts have also held that acts committed pursuant to a pattern of discrimination challenged in an EEOC complaint, but occurring after its filing, are reasonably related to that complaint, and may be challenged in district court without filing another EEOC complaint." Brown, 864 F.2d at 682 (emphasis added); see Almendral v. New York State Office of Mental Health, 743 F.2d, 963, 967 (2d Cir.1984); Waiters v. Parsons, 729 F.2d 233, 237-38 (3d Cir.1984).
 
 
 25
 In the instant case, Smith cannot reasonably argue that her discriminatory and retaliatory discharge claims were not reasonably related to her previous charge: namely, that the Board was discriminatorily and retaliatorily trying to terminate her employment. The facts and circumstances surrounding these two allegedly separate claims are inexorably interrelated. The school board's "discriminatory efforts to remove [Smith] as a teacher," Appellee's App. Doc. 2, Ex. CG, are the identical actions Smith claims resulted in her discriminatory and retaliatory discharge. Thus, an investigation into either claim would necessarily uncover precisely the same information. Furthermore, Smith's EEOC charge plainly stated that the acts of discrimination and retaliation were part of a pattern, and occurred on a continuing basis. See id. Consequently, the discharge claims were reasonably related to Smith's earlier charge and the district court's decision on these issues was permissible.
 
 
 26
 Having determined that the issues of discriminatory and retaliatory discharge were properly before the district court, we conclude that the district court properly granted summary judgment on these claims as well. Regarding Smith's discriminatory discharge claim, she failed to establish both the second and fourth prongs of her prima facie case. Thus, we affirm the district court's judgment as to this claim for essentially the same reasons set forth in the court's Memorandum and Order dated July 25, 1991.
 
 
 27
 Similarly, Smith was unable to establish a prima facie case of retaliatory discharge which required Smith to prove (1) she engaged in protected opposition to discrimination or participated in a proceeding arising out of discrimination; (2) adverse action by an employer subsequent to the protected activity; (3) a causal connection between such activity and the employer's action. See Anderson v. Phillips Petroleum Co., 861 F.2d 631, 634 (10th Cir.1988). The district court concluded, and we agree, that Smith failed to show a causal connection between her termination and the charges she filed with the EEOC. We have recently stated that "[t]he mere filing of a complaint against [the defendant] is insufficient evidence to defeat a summary judgment motion to dismiss the retaliation claim." Meredith, 18 F.3d 890, 897 (10th Cir.1994). Accordingly, we affirm the district courts dismissal of this issue as well.
 
 
 28
 Because Smith fails to establish a prima facie case of discrimination and/or retaliation regarding the terms and conditions of her employment or her discharge, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Thomas M. Reavley, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [3]
 The EEOC charge alleged continuous discrimination and retaliation in the form of harassment, unjustified letters of warning, placement on formal appraisal, and efforts to terminate her employment. Appellee's App., Doc. 2, Ex. CG. In October 1989, the EEOC issued a right to sue letter on this charge enabling Smith to file a complaint in federal district court
 
 
 [4]
 Smith's complaint also alleged violations of 42 U.S.C.1981 and 1983. The district court dismissed these claims on February 25, 1991. Smith argues for the first time in her reply brief that these claims should be reinstated. As a general rule, however, litigants who fail to raise an argument until their reply brief will be deemed to have waived that argument. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 723-24 (10th Cir.1993); see also Highsmith v. Chrysler Credit Corp., 18 F.3d 434, 438-39 (7th Cir.1994); United States v. Cox, 7 F.3d 1458, 1462 (9th Cir.1993); Frazier v. Bailey, 957 F.2d 920, 932 n. 14 (1st Cir.1992). Thus, we decline to address these claims
 
 
 [5]
 Smith then filed another civil action against the School Board in which she alleged that her placement on "formal appraisal" and discharge resulted from unlawful age discrimination, and that the School Board took certain actions regarding her teaching certificate, unemployment benefits, and pension benefits, in retaliation for her filing charges with the EEOC. The district court granted summary judgment for the School Board, Smith appealed, and we dismissed the appeal as untimely. Smith v. Denver Pub. Sch. Bd., No. 93-1457, 1994 WL 629118 (10th Cir. Nov. 10, 1994)