Diane E. SIMS, individually and on behalf of others similarly situated, Plaintiff,

v.

UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS, et al., Defendant.

No. 99–2406–WL.

United States District Court, D. Kansas.

Aug. 14, 2000.

Order Granting Reconsideration in Part, Oct. 24, 2000.

940

John B. Gage, II, The Gage Law Firm, P.C., Overland Park, KS, for plaintiffs.

Daniel B. Denk, Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for defendants.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

This is a race discrimination case arising out of plaintiff's employment with the Health Department of the Unified Government of Wyandotte County/Kansas City, Kansas. Plaintiff is an African American female who contends that she was discriminated against and retaliated against by defendants in the course of her employment. Specifically, plaintiff alleges that defendants, because of plaintiff's race, refused to increase plaintiff's salary to a competitive rate after she completed training through a federally funded program and obtained certification as an Advanced Registered Nurse Practitioner. Plaintiff brings numerous claims against defendants, including: (1) a Title VII claim alleging discrimination and retaliation, (2) a 42 U.S.C. § 1981 claim alleging discrimination and retaliation, (3) a Title VI claim alleging discrimination or retaliation in the application of a federally funded program, (4) a 42 U.S.C. § 1985 claim alleging conspiracy to discriminate on the basis of race, (5) a 42 U.S.C. § 1983 claim alleging denial of equal protection, (6) a 42 U.S.C. § 1983 claim alleging denial of procedural due process, and (7) a breach of contract or, alternatively, unjust enrichment claim.

Defendants have filed a Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c) (Doc. 19). As set forth in more detail below, defendants' motion is granted in part and denied in part.

Plaintiff has filed a Motion for Leave to File a Second Amended Complaint (Doc. 35). Defendants' sole objection to plaintiff's motion is that the proposed changes to her amended complaint are futile. Thus, the court will examine plaintiff's second amended complaint in considering defendants' motion, and, to the extent that the second amended complaint is not futile, will grant plaintiff leave to amend. *See* Fed.R.Civ.P. 15(a) ("leave shall be freely given when justice so requires"); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that the provision "leave shall be freely given" is a "mandate ... to be heeded"); *Viernow v. Euripides Devel. Corp.,* 157 F.3d 785, 799 (10th Cir.1998) (holding that the decision to grant leave to amend a complaint lies within the sound discretion of the trial court).

## I. Background [1]

Plaintiff is an African American woman employed by the Health Department of the Unified Government of Wyandotte County/Kansas City, Kansas (Unified Government). She began working for the Health Department in 1996 as a Registered Nurse (RN). In April, 1997, plaintiff

---

1. The facts presented here are taken from plaintiffs' amended complaint and, in accordance with the legal standard applicable to motions for judgment on the pleadings set forth below, the court accepts these facts as true.

was approached by her supervisors and asked if she would be interested in enrolling in the Advanced Registered Nurse Practitioners program at the University of Texas Southwestern Medical Center. Plaintiff was informed that federal Title X funds would be used to pay for the program's tuition fees and would also be used to pay her RN salary during the course of the program. After successful completion of the program and a preceptorship following the program, plaintiff would obtain certification as an Advanced Registered Nurse Practitioner (ARNP). Plaintiff was promised that upon obtaining certification she would receive a salary increase such that her salary would be competitive with other ARNPs in the Kansas City metropolitan area. In exchange for these benefits, plaintiff would be required to sign an agreement to work for the Health Department for two years after completing her preceptorship. Plaintiff accepted the offer and began the program.

While plaintiff was performing her preceptorship in the fall of 1997, the governments of Kansas City, Kansas and Wyandotte County, Kansas consolidated into the Unified Government. As a result of the consolidation, the Health Department, which had formerly been under the control of Wyandotte County, came under the authority of the Unified Government. Defendant Joseph Connor, the interim director of the Wyandotte County Health Department, continued to serve as the interim director of the Unified Government Health Department. Defendant Dennis Hayes, the former administrator for the city of Kansas City, Kansas, was appointed as the administrator of the Unified Government.

In light of her impending certification, plaintiff informed Mr. Connor that she would be requesting an increase in her salary. Mr. Connor responded by informing plaintiff that there were no dollars budgeted for such an increase and asking plaintiff why she expected an increase when the Health Department had "sent her to school." Plaintiff explained that a salary increase was part of the consideration for her agreement to work for the Health Department for two years following certification. The past participants of the ARNP training program, all white women, had received raises after they had completed the program and received certification. On April 17, 1998, plaintiff gave written notice to Mr. Connor that she had been certified as an ARNP. After consulting with Mr. Hayes, Mr. Connor mailed a letter to plaintiff detailing the economic benefit of the Advanced Registered Nurse Practitioners program to plaintiff and indicating that she would be responsible for reimbursing the Health Department for over $31,000 if she left her position before the expiration of two years.

After receiving Mr. Connor's letter, plaintiff filled out a Personal Action Form requesting a pay increase to the amount of $3,294 per month or $39,500 per year. Plaintiff based the specific amount of her request on a Wyandotte County Job Vacancy Announcement for August 26, 1996, which advertised the salary for an ARNP at "$3,294.00/Mo." Plaintiff later learned that the competitive salary range for nurse practitioners in the Kansas City metropolitan area in April, 1998 was between $45,000 and $55,000. Mr. Connor submitted plaintiff's Personal Action Form to Mr. Hayes in late April, 1998. On June 25, 1998, Mr. Connor informed plaintiff that Mr. Hayes had denied her request for an immediate pay increase. Instead, Mr. Hayes had approved a raise to be given in three increments over a two year period. On June 26, 1998, plaintiff submitted a memorandum to Mr. Hayes, stating that she had been orally promised by Health Department officials in 1996 that her salary would increase to $40,000 per year upon completion of the Advanced Registered Nurse Practitioners program. She further stated that she considered the failure to immediately increase her salary a breach of contract with serious legal repercussions.

Thereafter, plaintiff filed two grievances with the Unified Government, one alleging breach of contract and the other alleging discrimination and retaliation. In connection with those grievances, plaintiff substituted a "more realistic figure in line with comparables in the Kansas City area" for her initial request of a pay increase to $3,294 per month. Although Mr. Connor, Mr. Hayes, and others "failed to allow plaintiff Sims to pursue those grievances to their final stages," and "engag[ed] in the mediation process in bad faith," defendants unilaterally increased plaintiff's pay to the amount which she had originally requested, $3,294 per month.

On October 9, 1998, plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC), and on October 15, 1998, plaintiff filed a charge with the Kansas Human Rights Commission. In both charges, plaintiff alleged that she had been discriminated against and retaliated against because of her race. Plaintiff received a Notice of Right to Sue letter from the EEOC on June 10, 1999.

On November 19, 1999, when the Unified Government replaced its compensation program for a program assigning three salary ranges to each job classification, plaintiff was placed in the lowest salary range for her position, despite the fact that she had over one and one-half years experience as an ARNP. Plaintiff subsequently filed this suit on September 9, 1999.

## II. Legal Standard

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is governed by the same standards as a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir.1992). The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the

theory of recovery that would entitle him or her to relief, *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *See Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded factual allegations in the complaint, as distinguished from conclusory allegations, *see Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *See Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir.1998). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (overruled on other grounds).

In deciding a 12(c) motion for judgment on the pleadings, the court may generally not consider evidence outside the pleadings. *See Prager v. LaFaver*, 180 F.3d 1185, 1188–89 (10th Cir.1999) (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)). Documents referred to in a plaintiff's complaint and central to her claim, however, are not considered "outside the pleadings."[2] *Id.* Defendants attach a number of documents to their motion for judgment on the pleadings. While the court has discretion to convert a Rule 12(c) motion into a motion for summary judgment in order to consider matters outside the pleadings, the court declines to do so here. Defendants' motion for judgment on the pleadings was filed before discovery had progressed to any tangible degree. The court finds it inappropriate to consider this case for summary judgment at this early stage. Therefore, of the documents attached to the parties' papers, the court will only consider those referenced in

---

**2.** As to such documents, the district court is not required to consider them, but may do so

in its discretion. *See Prager,* 180 F.3d at 1189.

plaintiff's amended complaint and central to her claims.

## III. Discussion

Defendants present thirteen arguments as to why they should be awarded judgment on the pleadings in whole or in part. The court will begin by addressing five arguments which affect the majority of the counts brought in plaintiff's amended complaint. Then, the court will discuss the arguments that apply solely to particular counts brought by plaintiff.

### A. Broad–Reaching Arguments

The court begins its analysis of defendants' motion with a discussion of five arguments which are broad-reaching in scope. As set forth below, these arguments ultimately lead the court to conclude the following: first, that plaintiff must show cause why defendants' motion for judgment on the pleadings as to maintaining this suit as a class action should not be granted; second, that the claims asserted against Mr. Hayes and Mr. Connor in their official capacity are duplicative and are dismissed; third, that plaintiff must amend her complaint if she wishes to bring claims against the Unified Government under 42 U.S.C. §§ 1981, 1983 or 1985; and fourth, that plaintiff may not recover punitive damages against the Unified Government.

### 1. Maintenance of this Suit as a Class Action

Defendants' first argument is that, based on the allegations in her amended complaint, plaintiff cannot possibly maintain this suit as a class action pursuant to the requirements of Fed.R.Civ.P. 23. Plaintiff concedes that her Title VII claims cannot be the basis of a class action because she failed to include class allegations in the charge which she filed with the EEOC. *See, e.g., Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989). As to her remaining claims, however, plaintiff asserts that defendants have "attempted to prematurely raise issues

more properly considered on a motion for class certification." (Doc. 34 at 47). The court agrees that the appropriate time to address whether a plaintiff has met the requirements necessary to maintain a class action is after the plaintiff has filed a motion for class certification, as stated in D.Kan.R. 23.1(b). The court finds, however, that plaintiff has not filed a timely motion for class certification. Therefore, the court orders that plaintiff show cause by August 31, 2000, why defendants' motion for judgment on the pleadings as to maintaining this suit as a class action should not be granted.

### 2. Claims Asserted Against Mr. Hayes and Mr. Connor in their Official Capacities

Defendants next argue that because plaintiff has sued the Unified Government directly, it is duplicative to sue Mr. Hayes, the Unified Government Administrator, and Mr. Connor, plaintiff's supervisor at the Health Department, in their official capacities. Plaintiff responds that governmental officials may be properly sued in their official capacities. While plaintiff's response is a correct statement, it does not address defendants' concerns that naming Mr. Hayes and Mr. Connor as defendants in their official capacities can afford plaintiff no additional relief because there is no distinction between these defendants in their official capacity and the Unified Government. The court agrees that the claims against Mr. Hayes and Mr. Connor in their official capacities are duplicative and should be dismissed.

The Supreme Court has held that a suit brought against an individual in his official capacity is really "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "As long as the government entity receives

notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166, 105 S.Ct. 3099. When a plaintiff names both a municipality and a municipal officer in his official capacity as defendants in an action, the suit against the officer is redundant, confusing, and unnecessary and should be dismissed. *See Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991) (upholding dismissal of individual defendants sued in their official capacity in § 1983 case); *Cleland v. City of Caney,* No. 96–2338, 1997 WL 49136 (D.Kan. Jan. 24, 1997) (dismissing Title VII claim and § 1983 claim against individual defendants named in their official capacity); *Doe v. Douglas County Sch. Dist.,* 775 F.Supp. 1414, 1416 (D.Colo.1991) ("Although there is no Tenth Circuit decision on point, dismissal of plaintiff's redundant [§ 1983] claim is warranted as a matter of judicial economy and efficiency."); *Redpath v. City of Overland Park,* 857 F.Supp. 1448, 1456 (D.Kan.1994) ("[W]here the employer has been sued directly, it is duplicative to sue the supervisory employees in their official capacities [in a Title VII case]."). Here, it is duplicative for plaintiff to sue both the Unified Government and Mr. Hayes and Mr. Connor in their official capacities. Therefore, the court enters judgment on the pleadings on all of plaintiff's claims against Mr. Hayes and Mr. Connor in their official capacities.

### 3. Qualified Immunity as it Applies to Mr. Hayes and Mr. Connor in their Individual Capacities

Defendants also attempt to have plaintiff's claims brought against Mr. Hayes and Mr. Connor in their individual capacities dismissed.[3] They argue that Mr. Hayes and Mr. Connor are qualified immune from suit. The doctrine of qualified immunity holds that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It is well-settled that "[w]hen a defendant pleads qualified immunity, the plaintiff has the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions." *Greene v. Barrett,* 174 F.3d 1136, 1142 (10th Cir.1999). Moreover, "[w]here a qualified immunity defense is asserted in a 12(b)(6) motion ... we apply a heightened pleading standard, requiring the complaint to contain specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law." *Dill v. City of Edmond,* 155 F.3d 1193 (10th Cir.1998) (internal quotation and citation omitted).

■ While plaintiff agrees that the legal standards set forth above govern the court's decision as to qualified immunity, she does not attempt to specifically address either of the two prongs. Rather, she invokes Tenth Circuit precedent which allows a plaintiff to amend her complaint after the qualified immunity defense is raised. *See id.* at 1204 ("After the defense is raised, Plaintiff may amend his complaint to include additional specific, non-conclusory allegations of fact sufficient to allow the district court to determine whether Defendants are entitled to qualified immunity.") (internal quotations omitted); *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988) ("[O]nce the defense has

---

**3.** Plaintiff only sues Mr. Hayes and Mr. Connor in their individual capacities in her claims alleging violations of 42 U.S.C. §§ 1981, 1983, & 1985. *See supra* Sections III.B.1 and III.D.1 (discussing plaintiff's concession that Mr. Hayes an Mr. Connor are not individually liable for plaintiff's Title VII and Title VI claims).

been raised, the court must allow the plaintiff the limited opportunity ... to come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that law was clearly established when the alleged violation occurred."). Therefore, the court grants plaintiff leave to amend her complaint to add specific, non-conclusory allegations demonstrating that Mr. Hayes and Mr. Connor individually engaged in conduct that violated a clearly established law. Defendants' motion as to qualified immunity is denied without prejudice; it may be reasserted following the filing of plaintiff's amended complaint.

### 4. Pleading Municipal Liability Against the Unified Government

 The fourth argument asserted by defendants effects the counts brought by plaintiff against the Unified Government pursuant to 42 U.S.C. §§ 1981, 1983, and 1985. Defendants contend that plaintiff has made no allegations in her amended complaint which would be sufficient to give rise to municipal liability under these counts, and, thus, plaintiff's 42 U.S.C. §§ 1981, 1983, and 1985 claims against the Unified Government should be dismissed. A municipality cannot be held liable under § 1983 on a respondeat superior theory. *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1129 (10th Cir.1993). Rather, a municipality may generally only be held liable for the acts of an employee who posseses "final policymaking authority." *Jantz v. Muci*, 976 F.2d 623, 630 (10th Cir.1992). An employee is a final policymaker when his decisions are not subject to review. *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir.1995). However, "lawfully empowered decisionmakers cannot insulate themselves from liability under section 1983 by knowingly allowing a subordinate to exercise final policymaking authority vested by law in the decisionmakers. This type of delegation arises when a subordinate's decision is couched as a policy statement expressly approved by the policymaking entity, or when the decision manifests a custom or usage of which the entity must have been aware." *Jantz*, 976 F.2d at 631 (internal quotation and citations omitted).[4]

Plaintiff correctly states that the Supreme Court has rejected a heightened standard of pleading in claims against municipalities. *See Leatherman v. Tarrant County*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). A plaintiff is not required to specifically allege every element of her claim. *See Parsons v. Board of County Comm'rs*, 873 F.Supp. 542, 544 (D.Kan.1994); *Gallardo v. Board of County Comm'rs*, 857 F.Supp. 783, 787 (D.Kan. 1994). Nevertheless, pursuant to Fed. R.Civ.P. 8(a), a plaintiff must make at least minimal factual allegations on every element. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). As stated above, conclusory allegations will not sustain a plaintiff's pleading burden. While plaintiff here comes close to meeting the Rule 8(a) pleading requirements, the court finds that her first amended complaint falls just short of stating a municipal liability claim.

Plaintiff does not allege that a person with "final policymaking authority" discriminated or conspired against her on the basis of her race. She is not required to do so, however, if she pleads at least minimal factual allegations as to this element. Plaintiff alleges that Mr. Connor and Mr. Hayes failed to allow her to pursue her

---

**4.** As is discussed below, plaintiff's § 1981 claim asserting liability against the United Government must be brought pursuant to § 1983, thus making the § 1983 standards for municipal liability applicable to plaintiff's § 1981 claims. Likewise, the § 1983 standards for municipal liability are the same as the standards for municipal liability in the § 1985 context. *See Wesley v. Don Stein*

*Buick, Inc.*, 985 F.Supp. 1288, 1299 (D.Kan. 1997); *Howard v. Topeka–Shawnee County Metropolitan Planning Comm'n*, 578 F.Supp. 534, 538 (D.Kan.1983). Thus, although the court here only specifically discusses the § 1983 standard, this discussion is equally applicable to plaintiff's § 1981 and § 1985 claims.

grievances to their final stages. (Doc. 7, ¶ 42). This factual allegation could be interpreted to mean that the decisions of Mr. Connor and Mr. Hayes were not subject to review, as they alone could stop her claims filed with the Unified Government from proceeding. If this interpretation is proven true, Mr. Connor and Mr. Hayes would be considered policymakers and the Unified Government would be held liable for their actions. Moreover, plaintiff alleges that Mr. Connor told her that she would not receive a raise because "there were no dollars budgeted for any such salary increase." (Doc. 7, ¶ 34). Read broadly, this allegation could imply that decision-making authority was delegated to Mr. Connor who used a policy approved by the Unified Government (a budget freeze) to discriminate. If plaintiff is able to prove such an allegation, the Unified Government would not be permitted to hide behind its delegation of power to Mr. Connor and would be liable. Finally, plaintiff makes the conclusory allegation that Mr. Hayes' and Mr. Connor's decision to deny her a raise was "totally consistent with the custom, practice, policy, or other action of the Unified Government." (Doc. 7, ¶ 37). Again, if plaintiff were to set forth facts to support this statement, the Unified Government could be liable for a discriminatory custom of which it must have been aware. As the court has demonstrated, arguments can be made that plaintiff sufficiently pled factual allegations on the elements of municipal liability. The court finds, however, that these arguments require that one-too-many steps be taken to interpret what plaintiff "intended" to allege. *See Gallardo*, 857 F.Supp. at 787 (allegation that "the Board controlled all aspects of decisions to hire, fire, disciple (sic) and/or promote plaintiff" not suffi-

cient to allege that Board took final policy-making action). Therefore, the court will grant plaintiff leave to amend her complaint to more clearly allege facts which support her 42 U.S.C. §§ 1981, 1983 and 1985 claims against the Unified Government.

### 5. The Recovery of Punitive Damages Against the Unified Government

In each count brought in her amended complaint, plaintiff prays that the court enter an award of punitive damages against defendants. Defendants contend that the court may not grant plaintiff's prayer as to the Unified Government, however, as punitive damages are generally not recoverable against municipalities.[5] See e.g., *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Beth v. Espy*, 854 F.Supp. 735 (D.Kan.1994). Plaintiff concedes that "punitive damages are not available from the Unified Government on any of her claims in this action." (Doc. 34, at 47). Thus, even if plaintiff sufficiently amends her complaint to allege municipal liability against the Unified Government, the only claims under which plaintiff could potentially recover punitive damages are those asserted against Mr. Connor and · Mr. Hayes in their individual capacities—and then only if Mr. Hayes and Mr. Connor are not qualified immune from suit.[6]

### B. Title VII Claims

The first count of plaintiff's amended complaint alleges that defendants discriminated against her with respect to the terms and conditions of her employment because of her race in violation of 42 U.S.C. § 2000e–2(a), et seq., or, in the alternative, retaliated against her for com-

---

**5.** Defendants also argue that punitive damages may not be recovered in contract claims. A review of plaintiff's second amended complaint reveals that plaintiff does not seek punitive damages in either her breach of contract claim or her unjust enrichment claim.

**6.** As discussed above, the court dismisses plaintiff's claims on all counts against Mr. Hayes and Mr. Connor in their official capacities. As discussed below, plaintiff only seeks to recover against Mr. Hayes and Mr. Connor in their individual capacities in her claims asserted under 42 U.S.C. §§ 1981, 1983, and 1985.

plaining of discrimination on the basis of race in violation of 42 U.S.C. § 2000e–5 (Title VII claims). Defendants raise three arguments that plaintiff's Title VII claims should be dismissed, in whole or in part. As the discussion below evinces, plaintiff concedes that defendants' first argument is correct and the court dismisses plaintiff's Title VII claims against My. Hayes and Mr. Connor in their individual capacities. The court finds defendants' second argument correct in part and incorrect in part; plaintiff will not be permitted to use vague and conclusory allegations of "other" discrimination to support her Title VII claims, nor will she be permitted to support her Title VII discrimination claim with allegations that she was denied a "promotion" in November, 1999. Finally, the court rejects defendants' third argument that plaintiff has failed to state a claim upon which relief can be granted because defendant raises this argument prematurely.

### 1. Liability of Mr. Hayes and Mr. Connor in their Individual Capacities

■ Defendants argue that Title VII cases cannot be brought against defendants in their individual capacities. *See Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993). Plaintiff concedes that such is the present state of the law in the Tenth Circuit and that, as a result, Mr. Hayes and Mr. Connor are not proper parties to her Title VII claim. Accordingly, the court dismisses plaintiff's Title VII claim against Mr. Hayes and Mr. Connor.

### 2. The Limitation of Plaintiff's Claim to the Allegations Set Forth in Her EEOC Charge

■ Next, defendants maintain that under the so-called "exhaustion rule" plaintiff's Title VII claims must be limited to claims which she administratively asserted in her EEOC charge. The Tenth Circuit has adopted the rule, however, that in addition to the claims asserted in the administrative charge, a court may consider claims of discrimination that are "reasonably related" to the allegations in the charge. *See Aramburu v. Boeing Co.,* 112 F.3d 1398, 1409 (10th Cir.1997) (citing *Brown v. Hartshorne Pub. Sch. Dist. No. 1,* 864 F.2d 680, 682 (10th Cir.1988)). Moreover, a court may consider "complaints not expressly included in an EEOC charge ... where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made." *Martin v. Nannie And The Newborns, Inc.,* 3 F.3d 1410, 1416 n. 7 (10th Cir.1993). These rules are consistent with the purposes of the administrative filing requirement—to provide notice of the alleged violation to the charged party, and to provide the administrative agency with the opportunity to conciliate the claims. *See Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 799 (10th Cir.1997) (citing *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 126 (7th Cir.1989)).

In her EEOC charge filed on October 10, 1998, plaintiff checked the boxes for racial discrimination and retaliation, and then set forth, in relevant part, the following allegations:

In April, 1997, [members of the Health Department made Charging Party an offer] to attend the Women's Health Care Advanced Nurse Practitioners program ... pursuant to the Family Planning Title X federally-funded program which had been utilized before with other nurse practitioners all of which were Anglo Saxon and all of which were provided a raise to a nurse practitioner's salary upon completion of their certification. Charging Party accepted the offer made to her.

On April 17, 1998, when Charging Party received notice of her Certification she provided such notice to Respondent Joe Connor and Respondent Unified Government rather than provide her with the raise she was to have received [sic], Mr. Connor responded by sending her the attached Memorandum and Economic Projections purportedly detailing the economic

benefit to Charging Party of the training received and informing her that she would be responsible for reimbursing Respondents for the financial benefit she had received if she terminated her employment within the two-year period over which she had agreed to work for the Health Department. Respondents Connor and Unified Government forwarded such Memorandum to Charging Party at the same time as they grudgingly completed a Personal Action Form recommended [sic] a pay increase to the level of $3,294/month (a 1996 starting salary for nurse practitioners) to Respondent Dennis Hays, individually and as agent of Respondent Unified Government. On June 25, 1998, Charging Party was informed ... that Respondent Hays had denied Respondent Connor's request for a pay increase. Charging Party has still not received a salary increase from the Registered Nurse level to that applicable to an Advanced Registered Nurse Practitioner as of the date of this charge despite having accused Respondents of race discrimination in a Memorandum submitted June 26, 1998, and in formal grievance filed with Respondent on July 29, 1998.

Respondents' conduct towards Charging Party constitutes race discrimination and/or retaliation for complaining of race discrimination.

Defendants argue that this charge is not reasonably related to the claims of discrimination asserted by plaintiff in paragraphs 3, 7, 37, 38, 39, 43, 44, & 48 of her amended complaint. Many of these paragraphs, in whole or in part, discuss discrimination against African Americans as a class. Defendants assert that plaintiff can not sustain a class action based on Title VII because plaintiff did not include class allegations in her EEOC charge. In her response, plaintiff clarifies that she "is making no class allegations in Count I, which is her claim under Title VII." (Doc. 34 at 27). Thus, no allegations of class discrimination will be allowed to be brought pursuant to plaintiff's Title VII

claims. As to the remaining allegations in these paragraphs, plaintiff responds that the court should defer ruling as to their relatedness to the EEOC charge until the parties have engaged in discovery and until plaintiff has made a motion for class certification. As plaintiff concedes that her Title VII claims do not make class allegations, however, the court sees no value to deferring its decision until after plaintiff has moved for class certification. Moreover, plaintiff has not explained what value would be obtained by deciding the issue of administrative exhaustion after discovery has occurred and the court can find none. In fact, the court has routinely decided the issue on a Rule 12(b)(6) motion to dismiss. *See, e.g., Freeman v. Kansas,* No. 97–2531–JWL, 1998 WL 259899 (D.Kan. April 10, 1998); *Zinn v. McKune,* 949 F.Supp. 1530 (D.Kan.1996); *Aguirre v. McCaw RCC Communications, Inc.,* 923 F.Supp. 1431 (D.Kan.1996). Accordingly, the court will now address whether the allegations of discrimination against plaintiff asserted in these paragraphs are reasonably related to the claims of discrimination in plaintiff's EEOC charge.

In paragraph 3, plaintiff alleges that she was "subjected to deprivation of salary promised her in connection with the federally funded Family Planning Program encompassed by Title X through which defendant Unified Government received much of its funding, in effect denying her a promotion commensurate with her certification as an ... ARNP in an attempt to keep her at the employment level of Registered Nurse and who was otherwise discriminated against on the basis of her race or for complaining about such discrimination." The first half of this allegation, that because of plaintiff's race defendants deprived her of a salary increase upon her certification as an ARNP, is the precise subject of her EEOC charge. The court finds it properly within the scope of plaintiff's Title VII claim.

The second half of this allegation, that plaintiff was "otherwise discrimi-

nated against on the basis of her race," may not be reasonably related to plaintiff's EEOC charge if it does not relate to defendant's alleged failure to increase plaintiff's compensation upon her certification. Because the statement that she was "otherwise discriminated against" is vague and conclusory, the court is completely unable to determine whether or not such other discrimination was reasonably related to the administrative charges. In any event, the court will not consider this allegation as it fails to meet the pleading requirements set forth in Fed.R.Civ.P. 8(a). Fed.R.Civ.P. 8(a) requires that a pleading set forth a "short plain statement of the claim showing that the pleader is entitled to relief." This rule requires that the pleading do more than simply make allegations, rather, the pleading must state the facts upon which the plaintiff's claim rests. *See Williams v. City of Colorado Springs*, No. 98–1417, 1999 WL 235930, at *1 (10th Cir. April 22, 1999); *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1387 (10th Cir.1980). *See also Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998) (on a motion to dismiss, the court only accepts as true well-pleaded facts, not conclusory allegations). Because plaintiff asserts no facts to support her allegation that plaintiff was "otherwise discriminated against," this statement cannot be the basis of a Title VII claim.

In paragraphs 37, 39, and 43, plaintiff alleges that racial stereotypes led to defendants' refusal to increase her pay upon her advanced certification. Again, the court finds this an appropriate basis for plaintiff's Title VII claim as it speaks to the exact claim which was the subject of her EEOC charge.

While paragraph 38 generally discusses class discrimination, which, as stated above, plaintiff has conceded does not apply to her Title VII claims, it also alleges that defendants have imposed "policies and procedures which have a disparate impact on African American, employees, including plaintiff." To the extent that this statement is simply a reiteration of plaintiff's claims that, because of her race, she was thwarted in her attempts to receive a raise in her compensation following her certification as an ARNP, this allegation falls within the scope of plaintiff's EEOC charge and may be raised in her Title VII count. To the extent, however, that this statement was meant as a new allegation of discrimination, it is vague and conclusory and will not be considered. *See* discussion of ¶ 3 *supra.*

In paragraph 44, plaintiff alleges that defendants retaliated against her for complaining of discrimination in her grievance "by forcing her to work in situations from which white employees were exempted, [and] by discriminating against her by engaging in the mediation process in bad faith." One could read plaintiff's allegation that she was forced "to work in situations from which white employees were exempted" as referring to the allegation raised in her EEOC charge that, unlike white employees who completed the Advanced Nurse Practitioners program, she did not receive a pay raise upon her certification. To the extent that plaintiff meant to refer to this allegation, her statement in paragraph 44 may be used to support her Title VII claim. On the other hand, one could read this same statement as another vague and conclusory allegation of some other type of discrimination. As discussed above, the court will not allow such conclusory statements to be read to assert a new claim under Title VII. *See* discussion of ¶ 3 *supra.*

▮ The second part of plaintiff's allegation in paragraph 44, that defendants retaliated against her for complaining of discrimination by mediating in bad faith, is less conclusory. When read in context with the proceeding paragraphs, this statement alleges that defendants acted in bad faith when mediating the grievances which plaintiff had filed with the Unified Government seeking a salary increase. Although plaintiff never specifically mentioned bad-faith mediation in her EEOC charge, the

court finds this allegation reasonably related to the allegations that defendants refused to increase plaintiff's salary "from the Registered Nurse level to that applicable to an Advanced Registered Nurse Practitioner." *See Witherspoon v. Roadway Express, Inc.*, 782 F.Supp. 567, 571–72 (D.Kan.1992) (claims of discriminatory discharge reasonably related to administrative charge of discriminatory promotion practices). Moreover, the bad faith mediation of plaintiff's salary-based grievances could reasonably have been expected to come to light in the EEOC's investigation of plaintiff's charges. *See Martin*, 3 F.3d at 1416 n. 7 (claims of harassment by two co-employees would fall within the scope of an EEOC investigation into charges of harassment by supervisor, and thus were appropriate to support Title VII claim). Thus, the court finds that plaintiff's claims of bad-faith mediation may be used to support her Title VII claims.

Finally, in paragraph 48 of her amended complaint, plaintiff states that defendants "discriminated against Plaintiff Sims in particular with respect to the terms and conditions of her employment relating to her salary and *promotion*." (emphasis added). Plaintiff's use of the term "promotion" is problematic because plaintiff does not specifically contend that she was denied a promotion any place else in her complaint, nor in her EEOC charge. As discussed above, in paragraph 3 of her amended complaint plaintiff asserts that defendants' failure to increase her salary following her certification *in effect* denied her a promotion. To the extent that plaintiff intended to convey the same idea in paragraph 48, the court finds the allegation sufficient to support plaintiff's Title VII discrimination claims.

 On the other hand, plaintiff's use of the term "promotion" in paragraph 48 could refer to the allegations in paragraph 45 of plaintiff's amended complaint that on November 19, 1999, when the Unified Government replaced its compensation program with a program assigning three salary ranges to each job classification, plaintiff was placed in the lowest salary range for her position, despite the fact that she had over one and one-half years experience as an ARNP. To the extent that plaintiff is referring in paragraph 48 to the events in 1999, the court finds that they cannot be the subject of her Title VII *discrimination* claims.[7] First, plaintiff does not allege that her placement on the Unified Government's new compensation scale was in any way related to the alleged events which occurred over a year earlier relating to defendants' reluctance to give her a raise following her certification as an ARNP. The two claims arise from completely separate factual situations. *C.f., Freeman v. Kansas*, 97–2531–JWL, 1998 WL 259899 (D.Kan. April 10, 1998) (discriminatory discharge claim was reasonably related to racial harassment claim where both claims arose "out of the same course of alleged conduct by the Defendant during a short period of time."); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409–10 (10th Cir.1997) (hostile work environment claim not reasonably related to wrongful discharge claim contained in EEOC charge where claims based on different allegations of impermissible conduct); *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir.1994) (for claims to be reasonably related, EEOC charge and judicial complaint "must, at a minimum, describe the same conduct and implicate the same individuals") (cited with approval in *Welsh v. City of Shawnee*, No. 98–6243, 1999 WL 345597 (10th Cir. June 1, 1999)).

Second, the events occurring in November of 1999 took place after the EEOC action was administratively terminated on June 10, 1999. *See* Dept. of Justice letter, Exh. C of Amended Comp. Although the

---

7. As discussed below, the events in 1999 may be the subject of plaintiff's Title VII *retaliation* claim.

Tenth Circuit has adopted the Second Circuit's rule, set forth in *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1209 (2nd Cir. 1993), that where a plaintiff alleges that a *retaliatory* action occurs after the filing of a charge with the EEOC the retaliatory action is reasonably related to the EEOC charge, *see Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 799 (10th Cir.1997), the Tenth Circuit has not adopted the same rule for claims of *discrimination* occurring after the termination of an EEOC investigation. The court notes that while plaintiff cannot base her Title VII discrimination claims on the placement of plaintiff on the Unified Government's revised compensation scale (which conduct is unrelated to the discriminatory conduct alleged in her EEOC charge), plaintiff can base her Title VII retaliation claims on such conduct.[8]

### 3. Whether Plaintiff has Failed to State a Claim Upon Which Relief May be Granted

Defendants' final argument attacking plaintiff's Title VII discrimination and retaliation claims is that plaintiff has failed to state claims upon which relief can be granted. Defendants' motion discusses the evidence which a plaintiff is required to produce to meet the burden-shifting requirements set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Defendants' reply states that "[b]ecause plaintiff has failed to present any *evidence* of pretext, defendants are entitled to judgment as a matter of law." (Doc. 41 at 12) (emphasis added). The court finds defendants' argument premature at this juncture.[9] Discovery which may enable plaintiff to meet her *McDonnell Douglas* burdens has not yet been completed. Moreover, as discussed in Section II above, the court does not consider evidence outside the pleadings when decid-

ing a 12(c) motion. Plaintiff has clearly pled the elements of a Title VII claim in her amended complaint, thus meeting her sole burden at this stage in the proceedings. The court denies defendants' motion as to this issue.

### C. 42 U.S.C. § 1981 Claim

The second count brought by plaintiff seeks relief on the ground that defendants discriminated against her on the basis of her race, or, alternatively, retaliated against her for complaining of discrimination on the basis of her race, in violation of 42 U.S.C. § 1981. Although defendants make no arguments which solely touch on plaintiff's § 1981 claims, the court nonetheless specifically addresses this claim in order to clarify a technical pleading issue which the parties have brought to its attention. Defendants note in their motion that authority exists to support the proposition that 42 U.S.C. § 1983 is the exclusive remedy for pursing damages against a municipality for claims arising under § 1981. Agreeing that the law is unsettled as to whether a § 1981 claim against a municipality may be brought as an independent claim, plaintiff responds that she is asserting her claim both under § 1981 and under § 1983. In any event, defendants point out that the issue "appears to be purely academic, as these claims are governed by the same legal standards regardless of whether they are pursued directly under § 1981 or indirectly through § 1983." (Doc. 20 at 15). Academic or not, the court will rule on this issue for the sake of clarity.

In *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the Supreme Court ruled that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the

---

8. In *Malarkey,* the Second Circuit rejected the argument that a retaliation claim "must arise before administrative proceedings terminate in order to be reasonably related." 983 F.2d at 1209.

9. Defendant has cited no cases discussing the dismissal of a Title VII action at the pleading stage.

Constitution and laws,' provides for the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." While this ruling clearly states that § 1983 is the sole means for a plaintiff to pursue her § 1981 claim against a municipality, some courts have found that the Civil Rights Act of 1991 overruled *Jett.* The Civil Rights Act of 1991 amended § 1981 by adding subsection (c), which expressly provided recovery for violations of § 1981(a) "under color of state law." [10] This language, which mirrors language in § 1983, has led many courts to cursorily opine that since Congress borrowed the language from § 1983, Congress "presumably intended to borrow also the rules of municipal liability under § 1983." *Gallardo v. Board of County Comm'rs,* 857 F.Supp. 783, 787 (D.Kan.1994). *See also, La Compania Ocho, Inc. v. U.S. Forest Serv.,* 874 F.Supp. 1242, 1250 (D.N.M. 1995); *Morris v. Kansas Dept. of Revenue,* 849 F.Supp. 1421, 1426 (D.Kan.1994); *Arnett v. Davis County Sch. Dist.,* No. 92–C–988W, 1993 WL 434053 at *5 (D.Utah Apr.5, 1993); *Ford v. City of Rockford,* No. 88–C–20323, 1992 WL 309603 (N.D.Ill. Oct.15, 1992); *Robinson v. Town of Colonie,* 878 F.Supp. 387, 405 (N.D.N.Y.1995).

▮▮ Courts that have done a more complete analysis of the 1991 amendment, however, have held that Congress never intended to overrule *Jett* by adding subsection (c). Particularly relevant is the observation that, "[a]t no time in either the official summaries or in floor debate surrounding the enactment of subsection (c) did any congressperson mention *Jett* or the scope of municipal liability under Section 1981." *Philippeaux v. North Central Bronx Hosp.,* 871 F.Supp. 640, 655 (S.D.N.Y.1994). In fact, "[t]he legislative history of the Act mentions subsection (c) only briefly, and states that subsection (c) was added to reaffirm *Runyon v.*

*McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), which held that Section 1981 applied to nongovernmental entities." *Id.* As many courts have noted, it is not logical to conclude that Congress overturned *Jett* by implication, while expressly codifying the holding of *Runyon. See, Ebrahimi v. City of Huntsville,* 905 F.Supp. 993, 995 (N.D.Al.1995) ("*Jett* was not overruled by the addition of subsection (c) to § 1981 in the Civil Rights Act of 1991"); *Johnson v. City of Fort Lauderdale,* 903 F.Supp. 1520, 1523 (S.D.Fl.1995) ("[S]ubsection (c) was intended to codify the Court's holding in *Runyon, ...* not create a cause of action that did not previously exist"); *Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir.1995); *McPhaul v. Board of Comm'rs,* 976 F.Supp. 1190, 1192–93 (S.D.Ind.1997); *Wright v. North Carolina Dept. of Correction,* No. 1:99CV230, 2000 WL 683160, at *17 (M.D.N.C. March 17, 2000); *Johnakin v. City of Philadelphia,* No. 95–1588, 1996 WL 18821, at *3–4 (E.D.Pa. Jan.18, 1996). The court finds this second line of cases better reasoned and more persuasive than the first. Thus, the court adopts the view that *Jett'* s holding, to the effect that § 1983 provides the exclusive remedy for pursuing damages against a state actor for claims arising under § 1981, remains valid. Plaintiff is granted leave to amend her complaint to clarify that she is pursuing her 42 U.S.C. § 1981 claims, to the extent that they allege municipal liability, solely through the remedies provided by 42 U.S.C. § 1983.

### D. Title VI Claim

The third claim made by plaintiff is that defendants violated her rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq, to be free from intentional discrimination "under any program or activity receiving Federal financial assistance," *see id.* § 2000d. Defen-

---

10. In full, § 1981(c) states: "The rights protected against impairment by this section are protected against impairment by nongovern-

mental discrimination and impairment under color of State law."

dants respond to this claim by asserting, first, that Mr. Hayes and Mr. Connor cannot be held individually liable in a Title VI action. Plaintiff agrees and the court dismisses plaintiff's Title VI count against these defendants. Defendants then assert that the Unified Government is also an improper party to plaintiff's Title VI claim, as its status as a party is not supported by the allegations in plaintiff's amended complaint. As discussed below, the court denies defendants' motion on this ground.

### 1. Liability of Mr. Hayes and Mr. Connor in their Individual Capacities

Defendants argue that Title VI suits may only properly be brought against entities that receive federal funds, not against individual employees of such entities. *See Jackson v. Katy Indep. Sch. District,* 951 F.Supp. 1293 (S.D.Tex.1996). Plaintiff concedes that courts that have examined the issue unanimously hold that Title VI actions cannot be brought against individuals who are not federal funds recipients and that, as a result, Mr. Hayes and Mr. Connor are not proper parties to her Title VI claim. Accordingly, the court dismisses plaintiff's Title VI claim against Mr. Hayes and Mr. Connor.

### 2. The Unified Government as a Proper Party

Plaintiff's Title VI count is specifically based on the allegation that defendants discriminated against her in her employment with the Family Planning Program, which receives federal Title X funds. Title VI prohibits discrimination based upon race, color or national origin in "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. As explained by the Tenth Circuit, the "prohibition extends to discrimination in employment by programs or activities that receive federal funding;

however, covered entities can only be sued for employment discrimination 'where a primary objective of the Federal financial assistance to that program or activity is to provide employment.'" [11] *Reynolds v. School Dist. No. 1,* 69 F.3d 1523, 1531 (10th Cir.1995) (quoting 42 U.S.C. § 2000d–3). In order to establish a Title VI violation in the employment context, then, a plaintiff must prove (1) that he or she has been subjected to discrimination on the basis of race or national origin, (2) that the entity engaging in discrimination is receiving federal financial assistance, and (3) that the primary purpose of the federal financial assistance is to provide employment. *See Id.; see also Baker v. Board of Regents,* 991 F.2d 628, 631 (10th Cir.1993).

Defendants contend that plaintiff's Title VI claim must be dismissed for two reasons: (1) because the Unified Government is not the actual recipient of the Title X funds and (2) because plaintiff fails to plead that the Title X funds were given primarily for the purpose of providing employment as required to establish Title VI coverage. The court will address these arguments in turn. While defendants' first assertion that the Unified Government is not a "recipient of federal financial assistance," as required by Title VI, may ultimately be proven true, it is simply not relevant at this juncture. In her amended complaint, plaintiff alleges that because of her race she was "subjected to deprivation of salary promised her in connection with the federally funded Family Planning Program encompassed by Title X through which defendant Unified Government received much of its funding." (Doc. 7, ¶ 3). Accepting this allegation as true (as the court is compelled to do at this stage of the proceedings), the court concludes that plaintiff has adequately pled the "recipi-

---

11. 42 U.S.C. § 2000d–3 states:

Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

ent" element (as well as the "discrimination" element) of a Title VI claim.[12] *See Quinn v. National R.R. Passenger Corp.,* No. 97–C–3520, 1997 WL 790738, at *5 (N.D.Ill.Dec. 18, 1997) (where complaint simply alleged that defendant was "a recipient of federal financial assistance," allegations were sufficient to state a claim under Title VI; court denied defendant's 12(b)(6) motion). Moreover, the vast majority of courts faced with the issue of whether an entity receives federal financial assistance within the meaning of the civil rights laws have concluded that the resolution of the issue requires inquiry into factual matters outside the complaint and, accordingly, is a matter better suited for resolution after both sides have conducted discovery on the issue. *See, e.g., Shepherd v. United States Olympic Comm.,* 94 F.Supp.2d 1136, 1146–47 (D.Colo.2000) (denying defendant's motion for summary judgment and allowing plaintiff the benefit of discovery on the issue of whether defendant receives federal financial assistance sufficient to trigger section 504 of the Rehabilitation Act); *Communities for Equity v. Michigan High Sch. Athletic Ass'n,* 26 F.Supp.2d 1001, 1008 (W.D.Mich.1998) (plaintiffs entitled to discovery on issue of whether defendant receives federal financial assistance within the meaning of Title IX); *Bowers v. National Collegiate Athletic Ass'n,* 9 F.Supp.2d 460, 492 (D.N.J.1998) (plaintiff entitled to discovery on the nature of federal contracts and existence of any subsidies); *Gazouski v. City of Belvidere,* No. 93–C–20157, 1993 WL 515858, at *3 (N.D.Ill.Dec.13, 1993) (determination of whether defendant receives federal financial assistance is "better suited for resolution after both sides have had time for discovery on the issue"); *Gonzalez v. Development Assistance Corp.,* No. 88–0191–LFO, 1989 WL 205634, at *3 (D.D.C. June 21, 1989) (plaintiff entitled to discovery on issue of whether defendant, at the relevant

time, was a recipient of federal financial assistance within the meaning of section 504); *Bellamy v. Roadway Express, Inc.,* 668 F.Supp. 615, 618 (N.D.Ohio 1987) (question of whether entity receives federal financial assistance "ordinarily cannot be resolved on a motion for judgment on the pleadings"); *see also Squire v. United Airlines, Inc.,* 973 F.Supp. 1004, 1009 (D.Colo.1997) (characterizing as "sound" plaintiffs' argument that they should be allowed to conduct discovery on the issue of whether defendant received federal financial assistance for purposes of section 504, but granting summary judgment to defendant on separate ground in any event). For the foregoing reasons, the court rejects defendants' first argument for dismissal on the ground that the Unified Government is not the actual recipient of the Title X funds.

The court gives very little additional weight to defendants' second argument that plaintiff's Title VI claim must be dismissed because plaintiff fails to plead that the Title X funds were given for the "primary purpose" of providing employment. While plaintiff correctly points out that *Reynolds* was decided on a motion for summary judgment and only sets forth the elements which a plaintiff must ultimately *prove,* as opposed to *plead,* the case upon which the *Reynolds* court relied examined the pleading requirements for a Title VI claim in the employment context. *See Rosario–Olmedo v. Community Sch. Bd.,* 756 F.Supp. 95, 97 (E.D.N.Y.1991). In *Rosario–Olmedo* the court dismissed the plaintiff's Title VI claim because it failed to allege the "receipt of federal funds, their use, and whether their primary purpose is employment." *Id.* Other courts that have examined Title VI pleading requirements in the employment discrimination context have also held that a plaintiff must allege that the primary purpose of the federal

12. Although the parties go further and argue the merits of whether or not the Unified Government was a recipient of federal funds, on a motion for judgment on the pleadings the court only must examine whether or not plaintiff has made factual allegations in her complaint to support the elements of her claim.

funding was to provide employment. *See Weir v. Broadnax*, No. 89 Civ. 7446, 1990 WL 195841 (S.D.N.Y. Nov.26, 1990); *Richards v. New York State Dept. of Correctional Servs.*, 572 F.Supp. 1168, 1175 (S.D.N.Y.1983); *Clark v. Louisa County Sch. Bd.*, 472 F.Supp. 321, 323 (E.D.Va. 1979). The court concludes that the "primary purpose" element of a Title VI claim requires plaintiff to plead factual allegations which would support this element.

The court's conclusion as to this pleading requirement, however, actually has very little effect on the court's ultimate conclusion on this issue, because the court finds that plaintiff has adequately met the pleading requirement.[13] Plaintiff asserts in her amended complaint that the federal Title X funds "were provided for *the purpose* of facilitating employment." (Doc. 7, ¶ 60). Although plaintiff does not specifically use the word "primary" in her complaint, the court finds that plaintiff has met the liberal pleading standards which apply when a motion for judgment on the pleadings is brought. A reasonable inference from plaintiff's allegation is that "the purpose" means "the only purpose." If something is the only purpose, it logically must be the primary purpose. The court will dismiss a cause of action only when the plaintiff has pled no facts in support of the theory of recovery that would entitle him or her to relief. Here, the court concludes that plaintiff has adequately pled facts to support her Title VI claim. Plaintiff is entitled to the benefit of discovery on the issue of whether the Unified Government is a recipient of federal financial assistance within the meaning of Title VI. Thus, the court denies defendants' motion to dismiss the Title VI claims against the Unified Government.

### E. 42 U.S.C. § 1985 Claims

Following her Title VI count, plaintiff brings claims under 42 U.S.C. § 1985, al-leging that defendants conspired to discriminate against her on the basis of race, thereby violating her rights secured by 42 U.S.C. § 1981. Plaintiff asserts her § 1985 claims in her amended complaint, but then changes her assertion slightly in her proposed second amended complaint. As discussed above, the court will consider plaintiff's second amended complaint to the extent that the amendments are not futile. Although plaintiff does not specify in either complaint the sub-sections of § 1985 that she is proceeding under, plaintiff concedes in her response brief (Doc. 34 at 27–31) that she is entitled to remedies solely under subsections (2) and (3). Defendants raise two arguments in their motion with respect to plaintiff's § 1985 claims. As the analysis below explains, the court finds that plaintiff has failed to adequately plead a subsection (2) claim, but has adequately pled a subsection (3) claim; and that the intracorporate conspiracy doctrine does not bar plaintiff's § 1985 claims.

### 1. Pleading Requirements to Support a Conspiracy Allegation

■■■ Defendants' first articulated reason for dismissing plaintiff's § 1985 claims is that plaintiff fails to plead facts that would support her claims. As to plaintiff's subsection (2) claim, defendants maintain that subsection (2) only provides a remedy to a plaintiff who has been retaliated against for her involvement in a court proceeding. Plaintiff does not allege that defendants conspired against her for her involvement in a court proceeding; rather, she asserts that defendants retaliated against her "for complaining of such discrimination in her grievances and in her charges of retaliation." (Doc. 35, ¶ 44). Thus, to the extent that it is brought under subsection (2), plaintiff's § 1985 claim must be dismissed. The court agrees.

---

**13.** As with the "recipient" element of this claim, the parties unnecessarily discuss the substantive merits of the "primary purpose" element, even going so far as to argue the legislative purpose behind the enactment of Title X. On a motion for judgment on the pleadings, however, the court only must examine whether or not plaintiff has made factual allegations in her complaint to support the elements of her claim.

The second clause of § 1985(2), the clause upon which plaintiff relies (Doc. 34 at 28), provides a cause of action where:

two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2); *see also, Wright v. No. Skiter, Inc.,* 774 F.2d 422, 425 (10th Cir.1985) (dividing subsection (2) into separate causes of action). The Supreme Court interpreted this clause of § 1985(2) in a 1983 opinion. In *Kush v. Rutledge,* the Court examined the legislative history of § 1985. 460 U.S. 719, 725, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). The section was originally enacted as § 2 of the Civil Rights Act of 1871, which proscribed, in relevant part, conspiracies that interfere with the administration of justice in state courts. Finding that Congress did not intend to change the substantive meaning of the 1871 Act upon reclassifying the section as 42 U.S.C. § 1985, the Court held that the "second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts." *Kush,* 460 U.S. at 725, 103 S.Ct. 1483. Significantly, virtually all lower courts that have examined the clause have also limited the scope of subsection (2) to court proceedings. *See Roper v. County of Chesterfield,* 807 F.Supp. 1221, 1226–27 (E.D.Va.1992); *Lewis v. Green,* 629 F.Supp. 546, 550 (D.D.C.1986); *Britt v. Suckle,* 453 F.Supp. 987, 992 n. 8 (E.D.Tex.1978). Quite simply, subsection (2) does not apply to administrative proceedings. *See Roper,* 807 F.Supp. at 1227. For this reason, the court enters judgment for defendants on plaintiff's § 1985(2) claim.

▇▇▇ As to plaintiff's subsection (3) claim, defendants contend that plaintiff's complaint is deficient in alleging a conspiracy. The court disagrees. To state a claim under § 1985, a plaintiff must do more than merely allege the existence of a conspiracy in a conclusory fashion. *See Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1126 (10th Cir.1994). "Section 1985 conspiracy claims must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Langley v. Adams County,* 987 F.2d 1473, 1481 (10th Cir. 1993) (quoting *Crabtree ex rel. Crabtree v. Muchmore,* 904 F.2d 1475, 1481 (10th Cir. 1990) (appendix)). However, the factual allegations may be either direct or circumstantial, so long as they give rise to the inference that there was a "meeting of the minds" of the defendants. *Brever,* 40 F.3d at 1126 (citation omitted). The Tenth Circuit has recognized that " 'the nature of conspiracies often makes it impossible to provide details at the pleading stage and ... the pleader should be allowed to resort to the discovery process and not be subject to dismissal of his complaint.' " *Id.* (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1233, at 257 (2d ed.1990)).

Viewed in the light most favorable to plaintiff, the court believes that the second amended complaint states a claim against defendant under § 1985(3). Plaintiff has alleged a number of facts that give rise to the inference that defendants made an agreement to act together to discriminate against plaintiff on the basis of her race. First, plaintiff alleges that Mr. Connor, "after consultation with defendant Hayes," had decided to deny plaintiff a raise because of her race even before she formally gave him notice of her certification. (Doc. 35, ¶ 36). Plaintiff also states that Mr. Connor informed her that Mr. Hayes "took part in the process of consideration of Plaintiff's raise from the very beginning." (Doc. 35, ¶ 37). From these statements, the court can infer that Mr. Hayes and Mr. Connor came to a "meeting of the minds" about the action that they would

take if plaintiff sought a raise-they would deny plaintiff's request. Plaintiff then alleges facts that, if believed, show that Mr. Hayes and Mr. Connor acted in concert to further their agreement to deny plaintiff a raise. She states that upon giving written notice to Mr. Connor that she had been certified as an ARNP, Mr. Connor took no action to increase her salary. (Doc. 35, ¶ 36). Similarly, Mr. Hayes denied plaintiff's request for a salary increase after plaintiff submitted a Personal Action Form making such a request. (Doc. 35, Exh. A). Finally, plaintiff alleges that after she filed grievances with the Unified Government "defendants Connor, Hayes, Walker and Dunlay,[14] failed to allow plaintiff Sims to pursue those grievances to their final stages." This sequence of events, beginning with "consultations" between Mr. Hayes and Mr. Connor and ending with steps taken by Mr. Hayes and Mr. Connor to prevent plaintiff from receiving a raise, supports an inference that defendants conspired in violation of § 1985(3). *See Brever*, 40 F.3d at 1128 (plaintiff pled facts sufficient to allege conspiracy between manager and supervisor where plaintiff stated that manager made a statement at meeting threatening "whistleblowers" and supervisor later forbade plaintiff from "going to the FBI"). Defendants' motion is denied on this ground.

## 2. Application of the Intracorporate Conspiracy Doctrine

█ The second argument that defendants assert against plaintiff's § 1985 claims is that because of the intracorporate conspiracy doctrine it is impossible for plaintiff to plead a conspiracy. The intracorporate conspiracy doctrine, which first arose in the antitrust context, holds that a

corporation cannot conspire with its corporate agents. *See Brever*, 40 F.3d at 1126. Defendants' argument fails, however, because the Tenth Circuit follows the rule that the doctrine does not apply in the civil rights context.[15] *See id.* at 1127. Under the law in this circuit, an agreement between two employees of the same enterprise can constitute a conspiracy for § 1985 purposes. *See id. See also, Wesley v. Don Stein Buick, Inc.*, 985 F.Supp. 1288, 1298 (D.Kan.1997) (refusing to apply intracorporate conspiracy doctrine to § 1985(2) & (3) claims); *Butler v. City of Prairie Village*, 961 F.Supp. 1470, 1477 (D.Kan.1997) (reversed in part on other grounds) (refusing to apply intracorporate conspiracy doctrine to § 1985(2) claim). Accordingly, the court denies defendants' motion with respect to this ground.

## F. 42 U.S.C. § 1983

Next, plaintiff alleges that defendants violated certain of her constitutional rights, such that she is entitled to recover damages under 42 U.S.C. § 1983. As defendants point out, however, no count in plaintiff's amended complaint addresses plaintiff's § 1983 claims. Only the "General Allegations" section of plaintiff's amended complaint includes references to § 1983. This is an instance in which the court finds an examination of plaintiff's proposed second amended complaint particularly helpful in clarifying the scope of the present action. Plaintiff's memorandum in support of her motion for leave to file a second amended complaint states that plaintiff seeks "to add separate and distinct claims for violations of 42 U.S.C. § 1983." Indeed, plaintiff's proposed second amended complaint sets forth two distinct § 1983

**14.** The court dismissed Harold Walker and Charles Dunlay from this action on April 10, 2000. (Doc. 17).

**15.** Defendants recognize Tenth Circuit precedent, but make their motion for the purpose of preserving this issue on appeal. (Doc. 20 at 12). Defendants note that two circuits which the *Brever* Court looked to for guidance

have subsequently changed their position and now apply the intracorporate conspiracy doctrine in the civil rights context. As plaintiff has recognized, however, "there is no indication whatsoever that the Tenth Circuit Court of Appeals has reconsidered its rejection of the doctrine [in the civil rights context] in any fashion." (Doc. 34 at 32).

counts: Count III alleges that defendants violated plaintiff's right to equal protection of the laws, and Count VIII alleges that defendants violated plaintiff's right to procedural due process.[16] Defendants argue that plaintiff has failed to plead facts which would support either of these claims. The court will address the adequacy of plaintiff's § 1983 claims in turn.

### 1. Equal Protection

In her proposed second amended complaint, plaintiff avers that defendants violated her right "to equal protection of the law by discriminating against plaintiffs upon the basis of their race or, in the alternative, retaliat[ed] against them for their assertion of such rights guaranteed by the Constitution, thereby violating 42 U.S.C. § 1983." (Doc. 35, ¶ 60). Defendants raise two arguments in response to these allegations. As discussed below, the court agrees with defendants' first argument and, because such a claim would be futile, will not allow plaintiff to amend her complaint to assert an equal protection claim based on instances of alleged retaliation. The court disagrees with defendants' second argument and holds that plaintiff will be given the opportunity to amend her complaint to assert an equal protection claim based on alleged discrimination.

■ First, defendants assert that plaintiff cannot premise her § 1983 equal protection claim on the alleged retaliation because retaliation claims growing out of complaints of employment discrimination have not been recognized under the Equal Protection Clause of the Fourteenth Amendment. The court agrees. In order to maintain her Equal Protection claim, plaintiff must assert that she was retaliated against because of her membership in a suspect class. *See Kadrmas v. Dickinson Pub. Schools,* 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988). Plaintiff alleges

in her proposed second amended complaint that she was retaliated against for asserting her constitutional rights, not because she is African American. Thus, plaintiff asserts that the defendants retaliated against her because of her conduct, not because of her membership in a suspect class. Although the Tenth Circuit has not yet addressed this issue, "no court has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination." *Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir. 1996). *See also, Watkins v. Bowden,* 105 F.3d 1344, 1354 (11th Cir.1997) ("A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause."); *Edwards v. City of Goldsboro,* 178 F.3d 231, 250 (4th Cir.1999) (same); *Grossbaum v. Indianapolis–Marion County Bldg. Auth.,* 100 F.3d 1287, 1296 n. 8 (7th Cir.1996) ("We do not imply . . . that retaliation claims arise under the Equal Protection Clause. That clause does not establish a general right to be free from retaliation."); *Gray v. Lacke,* 885 F.2d 399, 414 (7th Cir.1989) (holding that the right to be free from retaliation for protesting discrimination is a right created by Title VII, not the Equal Protection Clause). Although plaintiff cites cases holding that a retaliation claim may be brought under § 1983 for a violation of § 1981, such cases have no effect on the general rule that a retaliation claim may not be brought under § 1983 for the alleged violation of a right protected by the Equal Protection Clause. Thus, as an equal protection claim based on instances of alleged discrimination would be futile, the court denies plaintiff's motion to assert such a claim in her second amended complaint.

■ Defendants' second argument speaks to plaintiff's claim that she was discriminated against in violation of the Equal Protection Clause. Defendants as-

**16.** To the extent that Plaintiff impliedly asserted in her amended complaint a § 1983 claim arising from the First Amendment right to free speech on matters of public concern, the court deems it abandoned since it was not asserted in plaintiff's proposed second amended complaint.

sert that Mr. Hayes and Mr. Connor could not have possibly violated plaintiff's equal protection rights by treating non-African American individuals who received their ARNP certification differently because Mr. Hayes and Mr. Connor were not involved with the Health Department when any other individuals received ARNP certification. Defendants further assert that plaintiff did not validly plead an equal protection claim against the Unified Government because she did not allege that the Unified Government was in the same financial situation at the time of plaintiff's request for a raise as at the time that previous ARNP's requested a raise. In light of the Fed. R.Civ.P. 8(a) pleading standard, the court rejects defendants' arguments. As this court has previously stated, at the pleading stage a plaintiff's equal protection claim will be allowed to go forward if the plaintiff simply alleges that the defendant acted with a racially based discriminatory purpose. *See Wesley v. Don Stein Buick, Inc.,* 996 F.Supp. 1299 (D.Kan.1998) ("Officer Stovall allegedly refused to investigate plaintiff's complaint ... because of a 'racially and/or class based discriminatory animus.' These allegations are sufficient to withstand a motion to dismiss under the federal rules."). *See also, Poolaw v. City of Anadarko,* 660 F.2d 459, 462 (10th Cir. 1981) (allegations of purposeful discrimination on the basis of race sufficient to withstand a motion to dismiss equal protection claim). Here, plaintiff has pled in her proposed second amended complaint that defendants refused to increase her salary because of plaintiff's race. (Doc. 35, ¶¶ 36, 60). The court therefore finds that plaintiff should have the opportunity to seek through discovery evidence that defendants treated similarly situated non-African Americans differently than they did

plaintiff.[17] The court grants plaintiff leave to amend her complaint to assert an equal protection claim based on defendants' allegedly discriminatory conduct.

**2. Procedural Due Process**

The second claim brought pursuant to § 1983 in plaintiff's proposed second amended complaint alleges that defendants violated her procedural[18] due process rights by (1) "depriving her of property in the form of the salary increase reasonably expected to receive," (2) "denying her an appeal or ignoring her request for an appeal specifically provided her by the grievance procedure of the Unified Government," and (3) "failing ever to issue a decision on a separate and distinct grievance filed ... pertaining to allegations of discrimination." (Doc. 35, ¶ 95). In order to state a claim for a due process violation, defendants, acting under color of state law, must have deprived plaintiff of some "definite liberty or property interest ... without appropriate process." *Southern Disposal, Inc. v. Texas Waste Management,* 161 F.3d 1259, 1265 (10th Cir.1998) (quoting *Curtis Ambulance v. Shawnee County Board of County Commissioners,* 811 F.2d 1371, 1375 (10th Cir.1987)). Defendants assert that plaintiff's allegations, even when viewed in the light most favorable to plaintiff, fail to state a claim of a due process violation. First, defendants contend that the promise of a salary increase upon plaintiff's completion of the ARNP program did not give rise to a protected property interest upon which plaintiff could base a due process claim. Second, defendants argue that, even if plaintiff had a protected property interest in a salary increase, she was provided appropriate

---

17. Defendants may re-assert this issue on summary judgment if defendants deem it appropriate to do so. It is interesting to note that in a later motion filed in *Wesley* seeking summary judgment, the court dismissed the plaintiff's equal protection claim because the plaintiff had not come forward with any evidence that the individual defendant treated non-African Americans differently than similarly situated African Americans. 42 F.Supp.2d 1192, 1193 (D.Kan.1999).

18. Plaintiff has clarified in her response brief that she is only pursuing allegations of procedural due process, not substantive due process. (Doc. 34 at 37–40).

process concerning defendants' denial of that property. For the reasons stated below, the court will allow plaintiff's procedural due process claim to proceed to the discovery phase.

The first prong of the due process analysis requires plaintiff to establish that she had a property interest in receiving a salary increase to the amount comparable with the salary received by other ARNPs in the Kansas City metropolitan area.[19] "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A legitimate claim of entitlement must arise from sources independent from the Constitution, such as from contracts or state statutes. *See id.* at 577–78, 92 S.Ct. 2701. Plaintiff's proposed second amended complaint sets forth a number of facts suggesting that plaintiff entered into a contract with the Unified Government which entitled plaintiff to a salary increase upon her certification as an ARNP. As the court must construe as true plaintiff's allegations that the parties reached a binding agreement, the court finds that plaintiff has sufficiently pled that she had a property interest in a salary increase of which she could not be constitutionally deprived without due process. *See Driggins v. City of Oklahoma City*, 954 F.2d 1511, 1515 (10th Cir.1992) ("Mutually explicit understandings can create a property interest … by means of an implied contract.") (*quoting Vinyard v. King*, 728 F.2d 428, 430 (10th Cir.1984)). Although defendants assert that the alleged contract cannot possibly be valid because it was not approved by the Wyandotte County Board of Commissioners, the court rejects this argument in Section III.

G.1 below (addressing plaintiff's breach of contract claim).

The second prong of the due process analysis requires a showing that plaintiff was denied the process to which she was entitled. Most due process claims in the employment context arise from a plaintiff's termination from employment, making them factually dissimilar to this case in which plaintiff alleges that she was denied a raise. The Tenth Circuit, however, has recently examined the process due a plaintiff who alleges that she was denied an employment benefit. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir.1998). In *Hennigh*, the defendants demoted the plaintiff as a form of discipline. The plaintiff asserted that he had a property interest in a particular employment status and that the property interest was denied him without due process. In evaluating the plaintiff's allegation that he was denied procedural due process, the Tenth Circuit stated that to succeed on a due process claim, a plaintiff must prove that he was not "afforded an appropriate level of process prior to the deprivation of the protected interest." *Id.* "The Due Process Clause of the United States Constitution entitles each citizen to notice and an opportunity to be heard prior to the deprivation of a fundamental right." *Id.* (citations omitted). Applying this standard, the Circuit held that the plaintiff was afforded due process where he was provided a "hearing before the Review Board … at which he was allowed to participate and was represented by counsel." *Id.* Unlike the plaintiff in *Hennigh*, however, plaintiff here alleges that she was not allowed to fully participate in a grievance hearing. Plaintiff asserts that defendants "failed to allow plaintiff Sims to pursue those grievances to their final stages." (Doc. 35, ¶ 42). Taking plaintiff's pleading as true, as it must when deciding a 12(c) motion, the court finds that *Hennigh* does not

19. Defendants assert that since plaintiff received a raise to the amount that she requested in the Personal Action Form which she submitted, her property interest was satisfied.

Defendants' argument is flawed, however, as plaintiff actually claims a property interest in a raise to a salary comparable to other ARNPs in the Kansas City area.

support defendants' argument that plaintiff received the process that she was due.

Likewise, defendants' assertion, that where there is an adequate post-deprivation hearing available a formal pre-deprivation hearing is not required, does not support a finding that plaintiff received due process. This assertion, though a true statement of the law, *see Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545–46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), is inconsequential to the issue at hand because the court must construe as true plaintiff's allegation that, after blocking a resolution in plaintiff's grievance proceedings, defendants then ignored plaintiff's request for an appeal. (Doc. 35, ¶ 95). Because a meaningful post-deprivation hearing was allegedly not made available to plaintiff, the court finds that plaintiff has adequately pled that defendants violated her due process rights when depriving her of her entitlement to an agreed-upon salary increase. Plaintiff may amend her complaint to clarify her procedural due process claim.

## G. State Law Claims

The final claims which plaintiff seeks to add in her proposed second amended complaint are two state law claims against the Unified Government. As discussed below, defendants have failed to adequately cite authority which supports their argument that plaintiff's state law claims are futile. Therefore, the court allows plaintiff to plead these claims in accordance with Fed. R.Civ.P. 15(a).

### 1. Breach of Contract

Plaintiff's proposed second amended complaint alleges that Wyandotte County, acting through Lemuel Wynn, director of the Wyandotte County Health Depart-

ment, entered into a contract with plaintiff whereby plaintiff promised to obtain certification as an ARNP and work for the Health Department for two years following such certification in exchange for the promise that Wyandotte County would increase plaintiff's salary to a rate comparable to that of other ARNP's in the Kansas City metropolitan area upon her receipt of certification.[20] Plaintiff maintains that the Unified Government ratified and assumed the obligations of Wyandotte County by relying on the contract in its dealings with plaintiff. Finally, plaintiff asserts that the "Unified Government breached its contractual obligations to Plaintiff Sims by refusing to pay her the amount agreed to by it or its predecessor in interest." (Doc. 35, ¶ 88).

Defendants assert that the court should deny plaintiff's request for leave to bring this additional claim because "plaintiff does not allege that her 'agreement' with Lemuel Wynn was ever authorized, approved, or entered into by the Wyandotte County Board of Commissioners." (Doc. 20 at 27). Defendants maintain that only the Board of Commissioners is authorized by Kansas law to enter into contracts on behalf of Wyandotte County. Defendants cite no authority, however, which supports this statement. While the court recognizes that a "municipal corporation cannot in any manner bind itself by any contract which is beyond the scope of its powers," *Wiggins v. Housing Authority,* 22 Kan.App.2d 367, 916 P.2d 718, 720 (1996), the parties have presented no authority discussing the scope of the Health Department's power. In fact, the parties devote no attention to Kansas statutory law prescribing the allocation of power within counties in the state. Therefore,

**20.** Defendants assert that plaintiff's breach of contract claim is fundamentally flawed because plaintiff does not plead that defendants or their predecessors agreed to pay her "market rate" when she obtained ARNP certification. The court rejects this argument because, while plaintiff does not use the term

"market rate," plaintiff does plead that the Unified Government's predecessor promised "that her salary upon completion of the program and preceptorship would be comparable to that of other nurse practitioners in the area." (Doc. 35, ¶ 86).

the court has no basis to conclude at this juncture that the alleged agreement is unenforceable on the ground that the director of the Health Department acted beyond the scope of his power by entering into it. The court grants plaintiff leave to amend her complaint to add a breach of contract claim.

### 2. Unjust Enrichment

As an alternative to her breach of contract claim, plaintiff seeks relief under the theory of unjust enrichment. Plaintiff alleges that the Unified Government failed to compensate her for the reasonable value of the services that she rendered as an ARNP, "paying her an amount 26% less than the amount found to be the market average." (Doc. 35, ¶ 92). The only reason that defendants put forth to support their argument that plaintiff's proposed claim is futile is that defendants are not aware of any Kansas authority which would support plaintiff's theory. Without more than defendant's unsupported opinion that plaintiff's proposed claim is based on a "novel theory," the court declines to find the claim futile. The court grants plaintiff's motion for leave to amend the portion of her complaint related to this ground.

### IV. Conclusion

The court has addressed a number of issues in this Memorandum and Order. Therefore, the court finds it helpful to recapitulate the scope of this action as it exists at this point. First, no claims remain against Mr. Hayes and Mr. Connor in their official capacities. Plaintiff's § 1981, § 1983, and § 1985 claims remain against Mr. Hayes and Mr. Connor in their individual capacities, but after plaintiff files an amended complaint, defendants may reassert their argument that Mr. Hayes and Mr. Connor are qualified immune from suit.

Second, plaintiff has not sufficiently pled facts which could support a finding of liability against the Unified Government on her § 1981, § 1983, and § 1985 claims, but plaintiff may amend her complaint to adequately plead municipal liability. Plaintiff has pled facts which support her Title VI claims against the Unified Government. However, plaintiff will not be allowed to recover punitive damages against the Unified Government on any of her claims.

Third, plaintiff's Title VII claim may not be supported by vague and conclusory statements, but may be supported by evidence that defendants mediated in bad faith. Moreover, the 1999 changes to the Unified Government's pay scale may not be used to support plaintiff's Title VII discrimination claim, but may be used to support plaintiff's Title VII retaliation claim.

Fourth, plaintiff's § 1985(2) claim is dismissed, but plaintiff's § 1985(3) claim remains viable.

Fifth, plaintiff may amend her complaint to assert a § 1983 equal protection claim based on defendants' alleged discrimination, but not based on defendants' alleged retaliatory conduct. Similarly, plaintiff may amend her complaint to add a § 1983 procedural due process claim, a breach of contract claim, and an unjust enrichment claim. When amending her complaint, plaintiff should also clarify that she is pursuing her § 1981 claims, to the extent that they allege liability by the Unified Government, through § 1983.

Finally, while the court has found that plaintiff may not bring a class action concerning her Title VII claims, the court has deferred deciding whether or not this case otherwise may be maintained as a class action. The court has ordered plaintiff to show cause why defendant's motion for judgment on the pleadings as to maintaining this suit as a class action should not be granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Judgment on the Pleadings (Doc. 19) is granted in part and denied in part. Plaintiff's Motion for Leave to File a Second

Amended Complaint (Doc. 35) is similarly granted in part and denied in part. Plaintiff shall file her second amended complaint in a form consistent with this Memorandum and Order no later than August 31, 2000. Plaintiff shall also show cause by August 31, 2000, why defendants' motion for judgment on the pleadings as to maintaining this suit as a class action should not be granted. Defendants may file a reply within ten days after service of plaintiff's response to the show cause order.

**IT IS SO ORDERED.**

## MEMORANDUM AND ORDER

This is a race discrimination case arising out of plaintiff's employment with the Health Department of the Unified Government of Wyandotte County/Kansas City, Kansas. Plaintiff is an African American female who contends that she was discriminated against and retaliated against by defendants in the course of her employment. Specifically, plaintiff alleges that defendants, because of plaintiff's race, refused to increase plaintiff's salary to a competitive rate after she completed training through a federally funded program and obtained certification as an Advanced Registered Nurse Practitioner (ARNP). On August 14, 2000, the court issued a Memorandum and Order which granted in part and denied in part a motion by defendants for judgment on the pleadings (Doc. 43).

Presently before the court is plaintiff's motion for reconsideration of the court's August 14, 2000 Memorandum and Order pursuant to Fed.R.Civ.P. 59(e) and D. Kan.

R. 7.3[1] (Doc. 44). Plaintiff alleges that two of the court's rulings in the Memorandum and Order were erroneous: (1) the ruling that the allegedly discriminatory administration of the Unified Government's 1999 compensation program could not support a Title VII discrimination claim because plaintiff did not exhaust her administrative remedies with respect to that claim; and (2) the ruling that the language in paragraph 3 of plaintiff's complaint, that she was "otherwise discriminated against on the basis of her race," could not support a Title VII discrimination claim because its vague and conclusory nature violated Fed. R.Civ.P. 8(a) and prevented the court from determining whether or not plaintiff exhausted her administrative remedies with respect to that claim. As discussed in detail below, the court grants plaintiff's motion with respect to the 1999 compensation program and denies plaintiff's motion with respect to the language in paragraph 3 of plaintiff's complaint.

Also before the court is plaintiff's response to the portion of the court's August 14, 2000 Memorandum and Order that directed her to show cause why defendants' motion for judgment on the pleadings as to maintaining this suit as a class action should not be granted, in light of plaintiff's failure to file a timely motion for class certification. As discussed below, the court finds that plaintiff has shown good cause for her untimeliness and the court extends the time for plaintiff to move for class certification.

### ● **Motion for Reconsideration**[2]

Whether to grant or deny a motion for reconsideration is committed to

---

1. Motions made pursuant to Fed.R.Civ.P. 59(e) and D. Kan. R. 7.3 are evaluated under the same legal standard. *See United States v. Schweibinz*, No. 93–40001–06–SAC, 1994 WL 129998, at *1 n. 1 (D.Kan. March 15, 1994).

2. On September 22, 2000, defendants filed a response (Doc. 55) to plaintiff's motion for reconsideration. Thereafter, plaintiff moved to strike defendants' response as untimely (Doc. 59). Defendants have since responded

to plaintiff's motion to strike, conceding the untimeliness of their response to the motion for reconsideration, but moving for an enlargement of time for the filing of the response (Doc. 62).

The court deems defendants' response to the motion for reconsideration untimely, strikes it from the record, and does not consider it in reaching the decision set forth below. Contrary to the assertion of defendants, the time period for filing a response to a motion for

the court's discretion. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1386 (10th Cir.1997); *Phelps v. Hamilton,* 122 F.3d 1309, 1324 (10th Cir. 1997). In exercising that discretion, courts in general have recognized three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *See Marx v. Schnuck Markets, Inc.,* 869 F.Supp. 895, 897 (D.Kan.1994) (citations omitted); D. Kan. R. 7.3 (listing three bases for reconsideration of order); *see also Sithon Maritime Co. v. Holiday Mansion,* 177 F.R.D. 504, 505 (D.Kan.1998) ("Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination."). "A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider." *Sithon,* 177 F.R.D. at 505.

Plaintiff's motion for reconsideration is premised on the third ground, that the court either committed clear error in rendering its decision or that manifest injustice would result from the court's misunderstanding of plaintiff's position in this case. As discussed in detail below, the court finds that it did misunderstand plaintiff's position of the relevance of the 1999 compensation program, but that it did not misunderstand plaintiff's position or commit clear error in ruling on the "otherwise

reconsideration is 10 days, not 20 days. D. Kan. R. 7.1(b) ("A party opposing a motion other than one to dismiss or for summary judgment shall, within ten days after service of the motion upon it, file … a written response."). Therefore, defendants' stated reason for the untimeliness of their response—that their counsel mis-marked the deadline on his calendar by one day—does not hold much weight with the court, as the response was more than 1 day, late.

Nevertheless, while a motion that is not responded to timely is considered an uncontested motion, the court is not required to grant the motion. D. Kan. R. 7.4. Motions for

discriminated against on the basis of her race" language in paragraph 3 of plaintiff's complaint.

● **Administration of the Compensation Program as Supporting a Title VII Discrimination Claim**

As stated in the court's August 14, 2000 Memorandum and Order, a plaintiff's Title VII claims are limited to instances of discrimination asserted by the plaintiff in a charge filed with the Equal Employment Opportunity Commission (EEOC). (Doc. 43 at 17). One exception to this so-called "exhaustion rule" is that a court may consider allegations of discrimination that are reasonably related to the allegations in the EEOC charge. (Doc. 43 at 17). Applying this standard, the court concluded that, to the extent that plaintiff's use of the term "promotion" in paragraph 48 of her amended complaint referred to the Unified Government's replacement of its compensation program with a program placing plaintiff at the lowest salary range for her position,[3] those events could not be the subject of a Title VII claim because plaintiff did not allege that they were related to her EEOC charge that defendants' failed to give her a raise following her certification as an ARNP over a year earlier. (Doc. 43 at 24). In her motion for reconsideration and accompanying brief, however, plaintiff explains that her amended complaint "alleged a continuing violation" of defendants' maintenance of her "at a level of income far below what she had been promised." (Doc. 45 at 8). Plaintiff

reconsideration, in particular, present the unique situation in which the court need not rely on a response brief to aid its understanding of the reasons for maintaining its order in its original form. Thus, the court proceeds to *evaluate the merit of plaintiff's motion.*

3. Plaintiff's current brief clarifies that she was actually placed in salary *range* 12, but that she was allocated to the lowest *step* within that range. (Doc. 45 at 2–3). This clarification has no effect on the issue of administrative exhaustion.

states that, "at least by implication, [she has alleged] that the application by defendants of the Classification and Compensation Study to plaintiff was yet another instance of a pattern of discrimination against her in compensation which served to perpetuate the effects of earlier discrimination and to keep her from being paid the salary which had been promised her, one comparable to other salaries in the community for Advanced Registered Nurse Practitioners." (Doc. 45 at 13).

The court acknowledges that in making its previous ruling it overlooked the "implicit" reference in plaintiff's amended complaint to the connection between defendants' refusal to grant her request for a wage increase following her ARNP certification and plaintiff's later placement on the 1999 compensation plan developed with the aid of an independent consulting firm. Upon review of plaintiff's second amended complaint and proposed third amended complaint, however, the court now understands plaintiff's argument and agrees that plaintiff is allowed to present evidence of the 1999 compensation plan in support of her Title VII discrimination claim. In her amended complaints, plaintiff alleges that her placement on the 1999 compensation scale was "determined by [her] old annual salary," which was below that of other salaries in the community for ARNPs. (Doc. 35 at 14); (Doc 52 at 22). According to plaintiff, this type of compensation program, premised on past compensation, has "the logical effect of perpetuating the past effects of wage or salary discrimination." (Doc. 35 at 14); (Doc. 52 at 23). The court finds that under plaintiff's argument, as the court now understands it, plaintiff's placement on the 1999 compensation scale was reasonably related to the claims in her EEOC charge—the placement further contributed to the damage suffered by plaintiff as a result of defendants' discriminatory conduct following plaintiff's completion of the ARNP program.[4] The court accordingly amends its August 14, 2000 judgment to allow plaintiff to present evidence of defendants' administration of the 1999 compensation program in support of her Title VII discrimination claim.

● **The "Otherwise Discriminated Against on the Basis of Her Race" Language as Supporting a Title VII Discrimination Claim**

Plaintiff's second objection to the court's August 14, 2000 Memorandum and Order also involves the court's ruling on her Title VII discrimination claim. The court held that "[b]ecause the statement that [plaintiff] was 'otherwise discriminated against [on the basis of her race]' is vague and conclusory, the court is completely unable to determine whether or not such other discrimination was reasonably related to the administrative [EEOC] charges." (Doc. 43 at 20). The court then stated, "[i]n any event, the court will not consider this allegation as it fails to meet the pleading requirements set forth in Fed.R.Civ.P. 8(a). Fed.R.Civ.P. 8(a) requires that a pleading set forth a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" (Doc. 43 at 20–21).

Plaintiff does not address the court's first concern that the broad language of this allegation inhibits an evaluation of plaintiff's compliance with the Title VII administrative exhaustion requirement. The court believes that its previous analysis was correct and that, for this reason alone, the "other discrimination" language cannot be used to support plaintiff's Title VII claim. Moreover, even if the court's decision were dependent on the court's second concern regarding Rule 8(a) pleading requirements, which plaintiff does ad-

---

**4.** The fact that the acts surrounding the 1999 compensation plan occurred after the EEOC investigation period had concluded is of no consequence in performing the "reasonably related" inquiry. *See, e.g., Woodman v. Run-* *yon*, 132 F.3d 1330, 1341–42 (10th Cir.1997); *Smith v. Denver Public Sch. Bd.*, No. 91–1285, 1994 WL 651978, at *6 (10th Cir. Nov.18, 1994).

dress, the court is not convinced by plaintiff's arguments that the allegation that she was "otherwise discriminated against on the basis of her race" satisfies the Rule.

The court's Memorandum and Order clearly set forth the legal standard that must be met by a plaintiff to satisfy Rule 8(a) pleading requirements. The court stated:

■ A plaintiff is not required to specifically allege every element of her claim. *See Parsons v. Board of County Comm'rs,* 873 F.Supp. 542, 544 (D.Kan.1994); *Gallardo v. Board of County Comm'rs,* 857 F.Supp. 783, 787 (D.Kan.1994). Nevertheless, pursuant to Fed.R.Civ.P. 8(a), a plaintiff must make at least minimal factual allegations on every element. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). As stated above, conclusory allegations will not sustain a plaintiff's pleading burden.... [Rule 8(a)] requires that the pleading do more than simply make allegations, rather, the pleading must state the facts upon which the plaintiff's claim rests. *See Williams v. City of Colorado Springs,* No. 98–1417, 1999 WL 235930, at *1 (10th Cir. April 22, 1999); *Mountain View Pharmacy v. Abbott Labs.,* 630 F.2d 1383, 1387 (10th Cir.1980). *See also Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998) (on a motion to dismiss, the court only accepts as true well-pleaded facts, not conclusory allegations).

(Doc. 43 at 13, 21). Citing *Corbin v. Runyon,* No. 98–6288, 1999 WL 590749 (10th Cir. Aug.6, 1999), plaintiff asserts that "specific instances of racial discrimination or retaliation against her followed by a more general allegation are [ ]sufficient, standing together, to allege a violation of Title VII." (Doc. 45 at 16). The court does not disagree that plaintiff has sufficiently pled a violation of Title VII. In fact, the court repeatedly held that language, both general and specific, in plaintiff's amended complaint that could be construed to reference the subject of plaintiff's EEOC charge—race discrimination via an inadequate salary following

certification as an ARNP—could support plaintiff's Title VII claim. (Doc. 43 at 20–24). The court simply found that "[b]ecause plaintiff asserts no facts to support her allegation that plaintiff was 'otherwise discriminated against,' this statement cannot be the basis of a [separate] Title VII claim." (Doc. 43 at 21).

Plaintiff urges the court to read the "otherwise discriminated against on the basis of her race" language in paragraph 3 of her amended complaint in conjunction with the language in paragraph 48 that the discrimination was "with respect to ... her compensation, work assignments, promotion, grievances, and work environment." This language in paragraph 48, however, simply summarizes the specific factual allegations of discrimination made earlier in plaintiff's complaint and addressed individually in the court's order. (Doc 43 at 20–21) (compensation); (Doc. 43 at 22) (work assignments and work environment); (Doc. 43 at 22) (grievances); (Doc. 43 at 23) (promotions). To the extent, then, that plaintiff intended the "otherwise discriminated against" language to refer to specifically pled facts of discrimination related to her EEOC charge and addressed by the court, it is simply surplusage which neither supports nor detracts from plaintiff's Title VII discrimination claim. The court did not rule that the specifically pled instances of discrimination related to plaintiff's inadequate compensation claim did not meet Rule 8(a) pleading requirements. Rather, the court simply ruled that this vague statement could not be used by plaintiff to support a separate race discrimination claim based on facts not pled in plaintiff's amended complaint. To hold otherwise would leave defendants vulnerable to the possibility of having to defend against unforseen allegations of discrimination, the very harm that Rule 8(a) is intended to prevent. *See Corbin,* 1999 WL 590749, at *4. Thus, because the "otherwise discriminated against" language could be construed to refer to discriminatory instances not alleged in plain-

tiff's complaint, the court reaffirms its previous ruling that the language does not meet Rule 8(a) pleading requirements.[5]

### ● Response to Show Cause Order

The next issue addressed by the court is plaintiff's failure to file a timely motion for class certification. In its August 14, 2000 Memorandum and Order, the court deferred ruling on defendants' motion for judgment on the pleadings as to the issue of whether plaintiff could bring this suit as a class action. (Doc. 43 at 8–9). The court agreed with plaintiff's contention that "the appropriate time to address whether a plaintiff has met the requirements necessary to maintain a class action is after the plaintiff has filed a motion for class certification, as stated in D. Kan. R. 23.1(b)." (Doc. 43 at 8). Finding no motion for class certification on file, however, the court ordered plaintiff to show cause why defendants' motion should not be granted. Plaintiff's response to the court's show cause order is now before the court.

Plaintiff's response explains that a number of mishaps prevented the parties from filing a Report of the Parties' Planning Meeting, which report contained an extended deadline for filing a motion for class certification.[6] (Doc. 51). Defendants concede in their reply that "defendants suggested that a deadline for the motion simply be submitted as part of the Report of Planning Meeting to the Court . . . . Unfortunately, as discussed above, the Re-

port was never submitted . . . ." (Doc. 56 at 3). Defendants further clarify that they "do not seek dismissal of plaintiff's class action claims based on the fact that she did not timely file a motion for class certification," but rather, seek dismissal on the merits of whether plaintiff has pled facts in her amended complaints which support maintaining this suit as a class action. (Doc. 56 at 4).

In light of the parties' previous agreement to extend the deadline by means of the Report of the Parties' Planning Meeting[7] and defendants' candid reply that they seek dismissal of plaintiff's class action claims for substantive reasons, rather than procedural reasons, the court extends the deadline for plaintiff to file a motion for class certification. As the parties have recently filed the Report of the Parties Planning Meeting, (Doc. 60), the court will set forth the new deadline for filing the Rule 23 certification motion in its upcoming Scheduling Order. Upon receipt of plaintiff's motion and the parties' subsequent briefings, the court will examine the merits of maintaining this suit as a class action.[8]

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's motion for reconsideration (Doc. 44) is granted in part and denied in part. Plaintiff's motion to strike defendants' response to the motion for reconsideration (Doc. 59) is granted. Defendants' motion for an enlargement of

---

5. The court notes, without indicating how it might decide the matter, that if plaintiff later discovers instances of discrimination which she did not previously plead, plaintiff may seek to amend her complaint to assert such discrimination.

6. The parties agreed to extend the class certification deadline apparently for the purpose of enabling plaintiff to conduct discovery of issues relevant to class certification before filing a Rule 23 motion.

7. The court recognized the parties' agreement in its May 10, 2000 Order:
"Based upon agreement of counsel for defendants, *who is also in agreement that additional time beyond that provided for herein* should be

provided for in the Scheduling Order entered in this case, and upon good cause shown, the Court hereby finds that the period within which plaintiff may file a motion to certify this action as a class action should be and hereby is extended for a period of 30 days, to and including June 7, 2000." (Doc. 25)

8. While the parties tangentially address the merits of plaintiff's class action suit in their current papers, the court remains convinced that the better time to address whether plaintiff has met the requirements necessary to maintain a class action is after a Rule 23 motion has been filed.

time to file a response to the motion for reconsideration (Doc. 62) is denied.

**IT IS FURTHER ORDERED** that the deadline for plaintiff to file a motion for class certification is extended to a date to be set in the Scheduling Order entered by the court.

**IT IS SO ORDERED.**